UNITED STATES, Appellee,

v.

Courtney G. JETER, Specialist
U.S. Army, Appellant.

No. 66,669.
CM 8702136.

U.S. Court of Military Appeals.

Argued May 6, 1992.
Decided Sept. 30, 1992.

For Appellant: *Captain Michael J. Berrigan* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel James H. Weise, Captain Michael P. Moran, Captain Beth G. Pacella* (on brief); *Major Michael J. Kelleher* and *Captain Timothy M. Lawlor.*

For Appellee: *Lieutenant Colonel Daniel J. Dell'Orto* (argued); *Colonel Dayton M. Cramer* (on brief).

*Opinion of the Court*
EVERETT, Senior Judge:

## I

### A

Specialist Jeter was tried on September 20, 1987, at Schofield Barracks, Hawaii, by a general court-martial composed of officers and enlisted members. Contrary to his pleas, he was convicted of three specifications of distributing cocaine and one specification of its use, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The sentence to a dishonorable discharge, confinement for 15 years, total forfeitures, and reduction to Private E–1 was approved by the convening authority; but he suspended all confinement in excess of 8 years.

On appeal to the Court of Military Review, Jeter raised issues as to the jurisdiction of the court-martial and the competence of his defense counsel. In support thereof, he submitted an affidavit concerning his conversations with the convening authority, Major General Crysel, who commanded the division to which appellant was assigned. According to this affidavit, the general's son, Jim, had been "involved in the use and distribution of drugs," and General Crysel had "promised to 'take care' of" Jeter "if he did not involve" Jim "in his case." Moreover, appellant's affidavit asserts that Jeter had informed his defense counsel of General Crysel's promise "to 'take care' of him," but defense counsel had done "nothing with respect" to that information. Finally, Jeter asserts that he was "not guilty of the offenses of which he ha[d] been convicted and that Jim Crysel could provide" him a helpful affidavit. Unpub. op. at 2 (Mar. 8, 1989).

Because of Jeter's affidavit and some other documentary evidence indicating that he "did have personal contact with" General Crysel, the Court of Military Review ordered a *DuBay** hearing to consider 20 questions specified by that court. Unpub. op. at 2–5.

The required hearing was conducted by Judge R.D. Cole, who submitted detailed findings of fact and conclusions of law. Essentially the findings are that Jeter engaged in a clever, but unsuccessful scheme to enlist the assistance of General Crysel by invoking the general's natural parental concern for the welfare of his son.

---

* *See United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

## B

According to Judge Cole's findings, Jeter, after being charged with the drug offenses, "took advantage of" General "Crysel's 'open door policy' to meet personally with him. To" gain "the general's interest," appellant claimed to know the general's son—whom, in fact, he had met on only one occasion—and Jeter asserted to the general that Jim "had a drug problem" and that he wished "to help" with that problem. However, having obtained an audience with General Crysel, Jeter "changed the subject," explained that he himself had been charged with drug offenses, but claimed that he was innocent thereof and "was being harassed by his" superiors and by the Criminal Investigation Command (CID). General Crysel "terminated the conversation at that point"; but thereafter, he "contacted the subordinate commanders and the CID commander to assure" that Jeter had not been harassed. Subsequently, both before and after his trial, Jeter telephoned General Crysel on several occasions "at the general's quarters" to discuss his case. "The general was noncommittal" and quickly terminated each of "these conversations." Unpub. op. at 2–3 (January 24, 1991).

According to Judge Cole's findings, Jeter "told his defense counsel that he had met personally with" General Crysel "and had information about the drug involvement" of the general's son which "might be useful." Defense counsel, in turn, advised Jeter of the crimes "of conspiracy, blackmail, and obstruction of justice." Thereafter, defense counsel asked for the advice of the regional defense counsel (RDC) about the situation; and this lawyer advised the trial defense counsel that he had "acted properly," that "there was nothing useful to the defense" in the information provided by Jeter, and that a "wait and see" approach should be adopted.

Before the case was referred to trial, the staff judge advocate, who had received only partial information about Jeter's "contacts with" General Crysel, "discussed" with his own "subordinates ... whether the convening authority was disqualified from referring the case to trial." At this point

> [b]y coincidence, MG Crysel left Hawaii on temporary duty at the time the case was ready for referral. In MG Crysel's absence, the staff judge advocate recommended to the acting commander, a colonel who knew nothing about the potential issue, that the case be referred to a general court-martial. The acting commander referred the case as recommended.

*Id.* at 3.

After Jeter's trial, General Crysel, pursuant to the recommendation of his staff judge advocate, requested that a higher command review the case, and this request was granted. According to the military judge's findings in the *DuBay* hearing, the commander superior to General Crysel who reviewed the case "exercised his independent judgment in taking action on findings and sentence." *Id.* at 3.

Judge Cole's conclusions of law were these:

1. Specialist Jeter was not denied his right to the effective assistance of counsel. Jim Crysel was not a relevant or material defense witness.

2. Defense counsel's failure to seek a full explanation of the connection between Jeter and the CG violated no legal or ethical rules. Once the offenses of extortion, conspiracy and obstruction of justice were explained and Jeter said that was not what he was doing, defense counsel correctly assessed the situation as being non-prejudicial to the accused and followed his RDC's advice. Wait and see!

3. The referral to trial was proper. Viewed from the perspective of facts now known—Specialist Jeter was trying to blackmail the CG—at no time prior to the trial was that clearly revealed. COL Vaughn [the Acting Commander] was totally ignorant of what had transpired and his referral was for all the right reasons. MG Crysel had no personal interest in the case at the time of referral and no

animosity against the accused. It does not seem fair and just that an accused can, by wild accusations and no more, force his case into another jurisdiction.

The Court of Military Review, in its second review of the case, held "that the military judge's findings of fact are amply supported by the evidence of record" and "commend[ed]" Judge Cole "for the even-handed, thorough, and conscientious inquiry in this case." Also, the Court of Military Review decided

that the military judge's conclusions of law are fully supported by the findings of fact. Accordingly, we hold that MG Crysel was not an accuser and therefore would not have been disqualified from referring the appellant's case to trial. Moreover, the referral of charges by the acting commander in the absence of MG Crysel was proper. *United States v. Williams*, [6 USCMA 243,] 19 CMR 369 (1955); *United States v. Wakeman*, 25 MJ 644 (ACMR 1987). We further hold that the trial defense counsel acted properly in the defense of this case and more than adequately met the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Finally, based on the thorough review of the entire processing of this case conducted by the military judge at the *Du-Bay* hearing, we are satisfied that there were no errors, omissions, or improprieties that affected the fairness or legality of the appellant's court-martial.

Unpub. op. at 4–5 (1991).

### C

After Jeter petitioned for review by this Court, we granted review on this specified issue:

WHETHER APPELLANT'S COURT-MARTIAL LACKED JURISDICTION TO TRY APPELLANT WHERE THE CHARGES WERE REFERRED TO THE COURT BY AN OFFICER WHO WAS A SUBORDINATE OF THE USUAL CONVENING AUTHORITY.

We now affirm.

### II

### A

At the outset, we note our agreement with the Court of Military Review's conclusion that Judge Cole's findings were amply supported by the evidence. Indeed, the evidence points clearly to the conclusion that appellant attempted to parlay a brief, onetime encounter with General Crysel's son—under perfectly innocent circumstances—into a means of obtaining favorable and unmerited treatment from the general.

### B

■ The situation involved in this case could hardly have been contemplated by the drafters of the Uniform Code of Military Justice. Nonetheless, we must seek to apply the Code's language to the extent it is applicable. In describing who may convene a general court-martial, Article 22(a), UCMJ, 10 USC § 822(a), refers to various commanding officers; and then Article 22(b) provides, "If any such commanding officer is an accuser, the court shall be convened by superior competent authority, and may in any case be convened by such authority if considered desirable by him." *Cf.* Art. 23(b), UCMJ, 10 USC § 823(b) (applies a similar provision to special courts-martial). The term "accuser" is defined by Article 1(9), UCMJ, 10 USC § 801(9), as "a person who signs and swears to charges, any person who directs the charges nominally be signed and sworn to by another, *and any other person who has an interest other than an official interest in the prosecution of the accused.*" (Emphasis added.)

The test of a convening authority's status as an accuser is "whether, under the particular facts and circumstances ... a *reasonable person* would impute to him a personal feeling or interest in the outcome of the litigation." *United States v. Gordon*, 1 USCMA 255, 260, 2 CMR 161, 166 (1952) (emphasis added). Under this test, the Court ruled in *Gordon* that a general who had himself been the victim of a bur-

glary was disqualified to be a convening authority.

In *Brookins v. Cullins*, 23 USCMA 216, 49 CMR 5 (1974), the commanding officer of a Navy ship on which Brookins and a number of other sailors had rioted, was held disqualified to be the convening authority for their court-martial on charges stemming from the riot. This Court also has ruled that a convening authority was disqualified to perform post-trial review responsibilities in *United States v. Crossley*, 10 MJ 376 (CMA 1981), because the accused's refusal to perform at a public ceremony presided over by the convening authority had created possible embarrassment for that official, so there was "a reasonable probability that this convening authority was personally interested in the outcome of the litigation." *Id.* at 378–79.

Undoubtedly, the prohibition against the convening of a general or special court-martial by an "accuser" was designed to protect an accused from a vindictive commander seeking to obtain a conviction because of some personal interest in the case and using his power as a convening authority to obtain this result. Here, on the other hand, the tactics used by Jeter were intended to assure that the convening authority would tilt the scales of justice in favor of the accused—rather than against him.

Nonetheless, in view of the personal meeting between Jeter and General Crysel and the various telephone calls, both before and after trial, made by Jeter to the General's home, we conclude that it would be stretching the language to say that General Crysel had only an "official interest in the prosecution of the accused." We come to this conclusion, although the military judge was apparently convinced from the evidence that General Crysel took no action intended either to harm or to help the accused, and even though we have no doubt that, at all the times involved, the general's motives were good.

Because General Crysel was an "accuser," he should have transmitted the charges to a "superior competent authority" to be referred for trial—just as ulti-mately he transmitted the record of trial to a higher command for action by the convening authority under Article 60 of the Code, 10 USC § 860 (1986). The findings of the military judge make clear that the failure to transmit the charges at an earlier time was the result of a change of some personnel in the office of the staff judge advocate and other special circumstances which were totally independent of General Crysel.

## C

■ In General Crysel's absence, the court-martial that tried Jeter was convened by Colonel Vaughn—one of the general's subordinates. It can be argued that, because of the convening authority's absence, Vaughn became the convening authority for purposes of referring charges and that, since he only had an "official interest in the prosecution," he was perfectly free to refer the charges to trial. We need not address this argument because, under our precedents, any violation of Article 22(b) in this case was not a jurisdictional error.

In *United States v. Ridley*, 22 MJ 43 (CMA 1986), this Court considered the referral of charges to a special court-martial by the commander of a host unit, who was junior in rank to the tenant unit commander. Although holding that, under Article 23(b), the convening authority was disqualified because of his junior status, the Court also concluded that the disqualification "was not jurisdictional." *Id.* at 48.

Earlier, this Court had taken a restrictive view of "jurisdictional" error in *United States v. Blaylock*, 15 MJ 190 (CMA 1983). There charges which had been referred to a special court-martial not empowered to adjudge a bad-conduct discharge were rereferred by a superior commander to a special court-martial empowered to adjudge such a discharge. Repudiating some earlier comments by our Court that such an intervention by a superior commander constituted "jurisdictional" error, we noted that "even in egregious cases of command influence, our Court has refused to hold that the error was 'jurisdictional.' *United*

*States v. Ferguson,* 5 USCMA 68, 17 CMR 68 (1954)." 15 MJ at 193.

Similarly, in *United States v. Thomas,* 22 MJ 388 (CMA 1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987), we recognized that—because of personal attacks being directed against him—the convening authority might have "then possessed a disqualifying personal interest in the outcome of cases to be referred"; but, citing *Ridley* and *Blaylock,* we concluded that, "even then any defect in referral would not have been jurisdictional." 22 MJ at 394.

**D**

■ Since any error involved in the referral of the charges against Jeter was not "jurisdictional" and since before trial he was aware of—and, indeed, had intentionally induced—the "personal interest" on General Crysel's part, the issue of waiver arises. We are inclined to believe that generally a violation of Article 22(b) is waived if an accused and his counsel are well aware thereof and make no objection or protest at trial. In any event, a waiver also exists when, as here, an accused attempts to create in the convening authority a "personal interest" that the accused expects will redound to his own benefit.

**E**

■ Jeter attempts to avoid application of waiver by contending that his defense counsel was incompetent, in that he raised no objection to the referral of charges by a convening authority whom he knew to have a "personal interest" in the case. Admittedly, defense counsel was confronted by a difficult ethical problem. Certainly he could not remain mute and continue to represent the accused, if his client was attempting to obstruct justice by blackmailing the convening authority. However, if defense counsel had revealed to military authorities what he suspected about the tactics being used by Jeter, the result of that revelation would not have been favorable for his client. Furthermore, Jeter apparently never expressed clearly to his defense counsel that he had tried to blackmail General Crysel.

Under these circumstances, we conclude that trial defense counsel had no obligation to make a disclosure to anyone at that time. However, even if he failed to perform a duty of disclosure, Jeter cannot complain, for such a disclosure would have upset his own well-laid plans. In short, under the circumstances of this case, appellant is not entitled to place any blame for his conviction and sentence upon the shoulders of his lawyer.

**III**

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN concurs.

Judge CRAWFORD did not participate.

COX, Judge (concurring):

I agree with Judge Gierke's excellent discussion of the law of "accusers." However, applying the law to the facts of this case leads me to the same conclusion as Senior Judge Everett, that the general was an "accuser."

In reaching that conclusion, I ask only the question, "Should I have removed myself as the judge in the case?" Quite candidly, I'm not certain that I could judge a person "fairly and impartially" if he used my son to try to obtain an advantage from me.

WISS, Judge (concurring in part and in the result):

I agree with the majority's conclusion that MG Crysel was, as a matter of law, an "accuser" within the meaning of Article 22(b), Uniform Code of Military Justice, 10 USC § 822(b), and that it was error for Colonel Vaughn to act as the convening authority because he was not General Crysel's "superior competent authority." *Id.* I agree, too, that the error was not jurisdictional. In my view, the Court's analysis of a similar situation in *United States v. Ridley,* 22 MJ 43 (CMA 1986), is controlling:

Since MG Crysel was an official authorized under Article 22(a) to convene this court-martial, the fact that he was *personally* disqualified from doing so (or, as here, the fact that a subordinate improperly acted in his stead) is not of jurisdictional magnitude. *Id.* at 47, 48.

I do not join Section IID of the principal opinion, 35 MJ at 447, however, that invokes waiver of the issue as the dispositive principle.* I note that, in *Ridley*, the Court observed that "no defense objection was lodged to" the improper referral there, even though the defense had all the information necessary upon which to base such an objection. Yet, the Court did not invoke waiver but, instead, tested the error for prejudice—pointing to the absence of an objection as a factor in that exercise.

I prefer to follow the same path here. Considering the serious nature of the charges facing the accused, it is most unlikely that a superior competent authority would have acted in a way other than the referral ordered by Colonel Vaughn. Moreover, there is no suggestion that MG Crysel in any way influenced Colonel Vaughn—indeed, as the majority points out, the court below found that Vaughn "knew nothing about the potential issue." 35 MJ at 444. In this light, and considering that the defense did not raise the issue at trial where any contrary evidence might have been elicited and, similarly, did not raise it during post-trial proceedings before a superior convening authority (Lieutenant General Bagnal), I conclude that there is no fair risk that appellant was prejudiced by this error. Art. 59(a), UCMJ, 10 USC § 859(a).

GIERKE, Judge (concurring in the result):

I agree that the court-martial in this case was not deprived of jurisdiction by MG Crysel's involvement with appellant, but I do not agree that MG Crysel was an "ac-cuser" within the meaning of Articles 1(9) and 22(b), Uniform Code of Military Justice, 10 USC §§ 801(9) and 822(b), respectively. The lead opinion interprets the Article 1(9) phrase, "other than an official interest in the prosecution of the accused," as meaning anyone who has a personal interest in the outcome of the prosecution, whether that interest be in favor of or against the accused. In my view, that interpretation of the word "accuser" is contrary to both the plain meaning of the word as well as its historical usage. I believe that the correct definition of "accuser" is limited to anyone who has a personal interest in ensuring that the accused is prosecuted.

The disqualification of a commander as "accuser or prosecutor" was first enacted in 1830 as an amendment to then Article of War 65. As explained by Colonel Winthrop:

> Its purpose clearly was to debar a superior for selecting the court for the prosecution and trial of a junior under his command, and, as reviewing authority, passing upon the proceedings of such trial, or executing the punishment, if any, awarded him, in a case where, *by reason of having preferred the charge or undertaken personally to pursue it, he might be biased against the accused, if indeed he had not already prejudged his case.*

W. Winthrop, *Military Law and Precedents* 61–62 (2d ed. 1920 Reprint) (emphasis added), quoted in *United States v. Gordon*, 1 USCMA 255, 258, 2 CMR 161, 164 (1952).

In 1878, the Attorney General of the United States defined the word "accuser," as used in the Articles of War of 1874, as a convening authority who had a personal "interest in the conviction of the prisoner." 1 USCMA at 258–59, 2 CMR at 165. In 1898 the Professor of Law at the United States Military Academy defined an "accuser or prosecutor" as one who *"initiates the*

---

* Since I do not apply waiver, I have no need to consider Section IIE of the principal opinion that addresses appellant's claim that his coun-sel's failure to object constituted inadequate representation.

charge out of a hostile *animus* toward the accused or a personal interest adverse to him, or from a similar motive adopts and makes his own a charge initiated by another." G. Davis, *A Treatise on the Military Law of the United States* 18 (1903). The term "accuser or prosecutor" appears without change in Article of War 72 and the Manual for Courts–Martial, U.S. Army, 1901, at 12; the Manual for Courts–Martial, U.S. Army, 1905, at 13; and the Manual for Courts–Martial, U.S. Army, 1908, at 13. The Judge Advocate General of the Army defined an "accuser or prosecutor" as one who formally prefers charges, "as his individual act," or "by reason of a personal interest adverse to the accused" adopts charges initiated by another. *A Digest of Opinions of the Judge Advocates General of the Army*, 1912, at 154. Paragraph 17, Manual for Courts–Martial, U.S. Army, 1917, explained the term "accuser" or "prosecutor," then appearing in Article of War 8 (1917), as follows:

> Whether the commander who convened the court is to be regarded as the "accuser or prosecutor" where he has had to do with the preparing and preferring of the charges, is mainly to be determined by his *animus* in the matter. He may, like any other officer, *initiate* an investigation of an officer's conduct and *formally prefer, as his individual act,* charges against such officer; *or by reason of a personal interest adverse to the accused he may adopt practically as his own charges initiated by another; in which cases he is clearly the accuser or prosecutor within the article.*

(Emphasis added.) The term "accuser or prosecutor" was retained unchanged in the Articles of War of 1920 and remained unchanged until adoption of the Uniform Code of Military Justice in 1950. Both the 1928 and 1949 Manuals defined "accuser or prosecutor" as follows:

> An accuser either originates the charge or adopts and becomes responsible for it; a prosecutor proposes or undertakes to have it tried and proved....Action by a commander which is merely official and in the strict line of his duty can not be regarded as sufficient to disqualify him.

Para. 5, Manual for Courts–Martial, U.S. Army, 1949; para. 5, Manual for Courts–Martial, U.S. Army, 1928.

There was no statutory definition of "accuser" in any of the Articles of War preceding the Uniform Code of Military Justice. The statutory definition first appears in Article 1(11) of the Uniform Code of Military Justice of 1950 (renumbered 1(9) in 1956). There is nothing in the legislative history of the Uniform Code of Military Justice which reflects congressional intent to change the historical meaning of "accuser" from its traditional meaning of a commander biased against an accused to a new meaning of a commander biased either for or against an accused. Accordingly, I do not concur in Senior Judge Everett's novel definition of "accuser."

In this case MG Crysel was not personally interested in appellant's conviction. To the contrary, MG Crysel permitted the investigation and processing of charges against appellant in spite of the likelihood of harm to his family. Duty took precedence over personal concerns. His conduct was the essence of a purely "official" interest in the prosecution.