UNITED STATES, Appellee,

v.

Aaron S. VOORHEES, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 98–0309.
Crim.App. No. 97–0831.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 2, 1998.

Decided July 15, 1999.

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and CRAWFORD, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Lieutenant Dale O. Harris*, JAGC, USNR (argued).

For Appellee: *Lieutenant Kevin S. Rosenberg*, JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC and *Commander D.H. Myers*, JAGC, USN (on brief); *Colonel Charles Wm. Dorman*, USMC, and *Lieutenant Commander Christian L. Reismeier*, JAGC, USN.

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried by a special court-martial composed of a military judge sitting alone at Marine Corps Recruit Depot, Parris Island, S.C., on September 24, 1996. Pursuant to a pretrial agreement, he pleaded guilty to introduction, distribution, and use of a small amount[1] of Lysergic Acid Diethylamide (LSD), in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was found guilty and sentenced to a bad-conduct discharge, confinement for 90 days, forfeiture of $583 per month for 3 months, and reduction to E-1. On March 31, 1997, the convening authority approved this sentence but suspended confinement in excess of 75 days for a period of one year from the date of his action. On November 25, 1997, the Court of Criminal Appeals affirmed the

findings of guilty and the sentence as approved but amended the suspension to include confinement in excess of 45 days.[2]

This Court granted review on the following three issues of law:

## I

WHETHER THE CONVENING AUTHORITY WAS AN ACCUSER DUE TO HIS PERSONAL INTEREST IN APPELLANT'S CASE, AND THEREFORE COULD NOT ENTER INTO A PRETRIAL AGREEMENT WITH APPELLANT.

## II

WHETHER THE CONVENING AUTHORITY WAS AN ACCUSER DUE TO HIS PERSONAL INTEREST IN APPELLANT'S CASE, AND THEREFORE COULD NOT PERFORM THE POST-TRIAL REVIEW OF APPELLANT'S CASE.

## III

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE CIVILIAN DEFENSE COUNSEL AND TRIAL DEFENSE COUNSEL BOTH FAILED TO OBJECT TO THE CONVENING AUTHORITY'S POST-TRIAL REVIEW WHEN THE CONVENING AUTHORITY BECAME AN ACCUSER PRIOR TO TRIAL.

We hold that the record of trial does not reasonably show that the convening authority in this case was an accuser within the meaning of Article 1(9), UCMJ, 10 USC § 801(9). *See United States v. Thomas*, 22 MJ 388, 394 (CMA 1986) (misguided prosecutorial zeal alone not sufficient to show convening authority was an accuser), *cert. denied*, 479

---

1.  Two hits of LSD were introduced; one hit was distributed; and some was consumed, all on or about July 19, 1996, at Marine Corps Recruit Depot, Parris Island, S.C.

2.  The Court of Criminal Appeals concluded that the convening authority's action contained a typographical error with respect to the amount of confinement suspended and took corrective action. Unpub. op. at 6.

U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

The record of trial in this case contains the following dialogue between the military judge and appellant concerning his pleas of guilty:

MJ: Lance Corporal Voorhees, are you entering into this pretrial agreement voluntarily?

ACC: Yes, sir.

Q. Has anyone tried to force or threaten you to enter into this agreement?

A. (No response from accused.)

Q. Would you like for me to repeat that?

A. Yes, sir.

Q. You're also very soft spoken; you need to speak up a little bit.

A. Aye, sir.

Q. Has anyone tried to force or threaten you to enter into this agreement?

A. [Accused and counsel confer.]

CC: Would Your Honor allow me to make a brief statement?

MJ: At this point, sir, I kind of want to hear from your client.

CC: He's having a problem with the question.

MJ: What would be the nature of the problem?

CC: Well, my brief statement will not go to his answer at all. He did have two discussions and he's afraid not to tell you about them; he thinks they may be germane and . . .

MJ: I will certainly ask him about them, if they are germane.

CC: Thank you, Your Honor.

MJ: Lance Corporal Voorhees, you are evidently having some hesitation in answering whether someone's tried to force or threaten you to enter into this agreement. It's not uncommon that people will tell you that if you don't enter into a particular agreement, you don't get the benefit of the agreement or that you're going to be tried in a certain fashion. In your particular case has someone done something different than that? Someone threatens your life or in some way tried to force you to enter into this agreement?

ACC: Not threaten my life, sir, no.

Q. Had they threatened you with prosecution?

A. Yes, sir.

Q. In other words, you were already facing prosecution, correct?

A. Yes sir.

Q. And what they have told you is, unless you plead guilty, they are not going to give you the benefit of whatever is in Appellate Exhibit II, the sentence-limitation portion.

A. Yes, sir.

Q. *Have they done more than that?*

A. *Sir, the comment "If you don't, you'll be burned," sir.* I don't know if that means what you think it does, sir. I don't know.

Q. Well, in my 18–plus years on active duty, what that means to me is that you will be prosecuted and punished.

A. Yes, sir.

Q. Is that what it means to you?

A. *Yes, sir, but it seems a little more harsh than that, sir. To be "burned," sir, as like everything they could get on me, sir.*

Q. *In other words, you were told if you didn't take the pretrial agreement, they were going to hit you as hard as the government could hit you.*

A. *Yes, sir.*

Q. Now, would you agree with me that the government's entitled to seek the maximum punishment, if they want?

A. Yes, sir.

Q. So is in essence this pretrial agreement an attempt by you to get the government not to get the maximum they could get against you?

A. Yes, sir.

Q. Has anyone threatened you with anything other than prosecuting you to the fullest extent that they could?

A. No, sir.

Q. More specifically, has anyone forced you to admit things that are not true?

A. No, sir.

Q. Has anyone forced you to give up rights you didn't want to give up in this case?

A. No, sir.

Q. *Basically, what you're telling me, then, is when they said that if you didn't plead guilty that they were going to burn you, they were going to seek the maximum punishment against you.*

A. *Yes, sir.*

Q. They were merely threatening what they could do in any event. Correct?

A. Yes, sir.

Q. So you entered into a pretrial agreement with them to protect yourself from the maximum punishment, is that correct?

A. Yes, sir.

MJ: Do counsel see anything ... or are counsel aware of anything in this case that was improper insofar as the entering of this pretrial agreement by the parties? Merely threatening to fully prosecute an individual would not, on its face, to the Court appear to be the threat or force contemplated by my question, causing someone to admit something they didn't do or causing someone to give up rights. Here he's getting a benefit for the bargain. In other words, he's being given some protection or some forum option in exchange for his pleas of guilt. Is that true?

CC: May I address the Court, Your Honor?

MJ: Yes.

CC: The problem here is we've got a young man that's trying to be punished, wants to be punished. He knows he made a mistake; he does not deny it, has not denied it since day one. *He was approached, absent the presence of counsel, on two occasions, and I know what occurred, and I can, to some degree, understand it, but it was probably very improper.* If the Court would like to inquire, I suggest a line of questions asking him specifically who contacted him, when and why might be helpful. *But it was done absence [sic] the presence of counsel, without the knowledge or the benefit of counsel, and it was done after the attorney-client privilege was created, and that fact was well known to the parties that approached him.*

MJ: Who talked with you about a pretrial agreement?

ACC: Sir.

Q. Other than your counsel, who has talked to you about a pretrial agreement?

A. *My Headquarters Company commander, sir, and my battalion commander, sir.*

Q. *Lieutenant Colonel Christopher talked to you?*

A. *Yes, sir.*

Q. When and where did he talk to you about this?

A. I don't have the date exactly, sir. I was called across the street to talk to my captain, Captain Vindyard, sir—

Q. *Captain who?*

A. *Vindyard.*

Q. Can you spell that?

A. V-y-n ... pardon me, V-i-n-d-y-a-r-d.

Q. Okay, and what occurred when you talked with the captain?

A. He just wanted to make sure that I was all right, sir, make sure I was okay as in how I was holding up under the pressure and stress, sir, making sure that one of his troops was doing okay, sir.

Q. [sic] *Okay. He asked me if I knew that Mr. Montis could be considered a hindrance more than a help sometimes.*

Q. *Because you're hiring a civilian counsel?*

A. Yes, sir.

Q. All right, what happened after that discussion?

A. I told him I was doing okay, sir, and the stress was okay, sir, and that my job duties were okay, sir, and that I was okay, sir. He dismissed me and as I was walking out of the S–1 hatch, I don't know if you've been to second battalion, sir; there's two hatches; *I was walking out of the S–1 hatch to go back to my mess hall, sir, and the colonel was in the hallway, sir, and he said, "Lance Corporal Voorhees," and I stopped and came to the position of attention, sir. He was walking into the head, and he asked me, he said, "Have you signed off on that pre-agreement ..." I don't know what it's called exactly, sir.*

Q. Pretrial agreement?

A. Pretrial agreement. The 45 days and I said—

Q. Okay, first of all, I don't want any discussion about what the terms of the agreement are, okay? Whatever your agreement is, I don't want to know. Do you understand that?

A. Yes, sir.

Q. So don't mention anything about what's in your agreement. I just want to know in general terms what your discussion is [sic] with the colonel.

A. *Aye, sir. He asked me if I was going to take the agreement, sir, and I said that my counsel was still in question on it and he looked at me and he said, "If you don't take it, I'm going to burn you."* And it kind of made me upset, so I went back to my mess hall and I called Mr. Montis.

MJ: Counsel, we're at a good point for a short recess. Court's in recess.

(Emphasis added.)

The military judge then conducted an extensive inquiry of appellant concerning his pleas of guilty in light of the above disclosures. He subsequently ruled as follows:

MJ: At this point I do find the pretrial agreement to be in accord with appellate case law, not contrary to public policy or my own notions of fairness, and the agreement is accepted.

For the appellate courts, I specifically find that if the statement was made, as the accused alleges, by the battalion commander, at that point the agreement was already on the table so far as any terms, and that the accused thereafter had an opportunity to discuss with his counsel his concerns regarding that comment, as well as his options; that he was aware of his options to elect trial by military judge alone or members and to plead guilty or not guilty, and that having consulted with his counsel, he made a free and voluntary decision to nevertheless enter into the pretrial agreement and that the impetus causing him to do so was not the threat by the battalion commander, but more the desire to protect himself from a possible maximum punishment from this Court. So at this point the agreement is accepted.

Do you have any questions, Lance Corporal Voorhees, regarding the meaning and effect of your pleas of guilty?

ACC: No, sir.

MJ: Do you still wish to plead guilty?

ACC: Yes, sir.

MJ: I find that you have knowingly, intelligently, and consciously waived your rights against self-incrimination, to a trial of the facts by this court-martial, and to confront the witnesses against you. I further find that your pleas are made voluntarily and with a factual basis, and they are accepted.

No objection was lodged by appellant as to this ruling or later to the convening authority's qualification to conduct the post-trial review in this case.

— — —

I

Appellant challenges the findings of guilty and sentence in his case on the basis that his convening authority was an "accuser" who was disqualified from entering a pretrial agreement with him. He cites this Court's decision in *United States v. Nix*, 40 MJ 6, 7 (1994), for the proposition that the findings of guilty and the sentence in his case should be set aside and the pretrial negotiations begun again. In *Nix*, a commanding officer who was an accuser was disqualified from making a pretrial-disposition recommendation, so the findings and sentence had to be set aside. Appellant further argues that the military judge's acceptance of his guilty pleas based on such a pretrial agreement was plain error because it would send a dangerous "message to military commanders and diminish[ ] the public's perception of the military justice system." Final Brief at 11. He generally cites *United States v. Berry*, 34 MJ 83, 88 (CMA 1992) for this proposition (appearance of fairness, as well as actual fairness, required for court-martial). Accordingly, he asserts that the appellate court below erred in affirming his conviction and that the findings and sentence of his court-martial should now be set aside.

Appellant and his defense counsel were obviously aware of his convening authority's

conduct prior to this court-martial's opening session and his proffer of pleas of guilty. Moreover, they both clearly indicated on the record that they waived any claim that this conduct created any issue concerning the convening authority's prior referral of the charges in his case. (R. 37) However, his later claims on appeal, at least arguably, go beyond his referral waiver and permit at least limited consideration of his accuser claim. *See United States v. Nix, supra; cf. United States v. Shiner,* 40 MJ 155 (CMA 1994); *United States v. Jeter,* 35 MJ 442, 447 (CMA 1992) (issue of convening authority's disqualification to refer case waived by knowing failure to raise it at court-martial).

Article 1(9) states:

(9) The term *"accuser" means* a person who signs and swears to charges, any person who directs that charges nominally be signed and sworn to by another, and *any other person who has an interest other than an official interest in the prosecution of the accused.*

(Emphasis added.)

Appellant asserts that Lieutenant Colonel Christopher's conduct caused him to "abdicate[ ] his role as Convening Authority and assume[ ] the role of an accuser." In particular, he notes the convening authority's threat to burn him, which "communicated his anger in very dramatic terms" to appellant. Final Brief at 11. He argues that such conduct disqualified the convening authority from further involvement in this case, including participation in the plea-agreement process, and thus invalidated the findings of guilty and the sentence. *See United States v. Nix, supra.*

Article 23, UCMJ, 10 USC § 823, delineates those commanding officers or officers in charge who are authorized to convene a special court-martial. This codal provision, however, also provides:

(b) *If any officer is an accuser,* the court shall be convened by superior competent authority, and may in any case be convened by such authority if considered advisable by him.

(Emphasis added.)

■■■■ The test for determining whether a convening authority is an "accuser" under Articles 1(9) and 23(b) is whether he "was so closely connected to the offense that a reasonable person would conclude that he had a personal interest in the matter." *United States v. Jackson,* 3 MJ 153, 154 (CMA 1977) (citing *United States v. Reed,* 2 MJ 64, 68 (CMA 1976)). Personal interests relate to matters affecting the convening authority's ego, family, and personal property. A convening authority's dramatic expression of anger towards an accused might also disqualify the commander if it demonstrates personal animosity. *Jackson, supra* at 154. "[M]isguided zeal," alone, however, is not sufficient. *See Thomas,* 22 MJ at 394.

■■■■ Unlike *Nix,* this record contains no evidence of personal interest on the part of the officer acting in appellant's case or evidence of personal bias on that officer's part towards him. It does show a convening authority directly involved in the pretrial-negotiation process and one familiar with the language or jargon of plea bargaining. However, whether the words used by the convening authority made him an accuser or circumstantially demonstrated impermissible bias on his part involves an assessment of additional matters such as demeanor, tone, and context. *See United States v. Jackson, supra.* All these circumstances appellant could have evidenced or contested at trial, but he chose not to do so. The military judge here focused the attention of everyone in the courtroom on the accuser issue, and appellant and his defense counsel simply passed up the opportunity to fully litigate it. In this context, nothing more is required to resolve his post-trial complaint concerning the validity of his pretrial agreement with this convening authority. *See United States v. Jeter, supra.*

II

■■■■ The second granted issue essentially asks whether it was plain error for the convening authority to take the post-trial action in this case. *See also United States v. Edwards,* 45 MJ 114 (1996) (staff judge advocate's performance of post-trial review was

plain error). It is premised on the same complained of conduct of the convening authority which appellant avers made him an accuser. *See* RCM 1107(a), Discussion, Manual for Courts–Martial, United States (1995 edition). Again, we disagree.

Appellant and his counsel clearly knew about the convening authority's statement and the possibility that it might impact on his qualifications to take action in this case. No objection, however, was made at trial. On the contrary, they only preserved this issue as to possible future action. Later, however, there was no objection to the convening authority's taking the post-trial action in this case on this basis or any other. Finally, the record shows that appellant, without expressed reservation, actively sought clemency from this convening authority by means of letters from himself and his counsel. We conclude that no plain error occurred in these circumstances. *See United States v. Powell,* 49 MJ 460, 465 (1998) (material prejudice required for plain error).

### III

■ The third issue before us is whether appellant's defense counsel were ineffective for failing to object to the qualifications of LtCol Christopher to take post-trial action as a convening authority in this case. As noted above, the military judge and defense counsel expressly indicated that they did not consider this issue waived by appellant's guilty pleas. Nevertheless, the record shows that LtCol Christopher subsequently took post-trial action in this case without any objection by appellant or his attorneys.

We find no deficient performance by counsel in this case for two reasons. First, as noted above, the record of trial does not reasonably establish that the convening authority was an accuser in this case or that he was disqualified to perform the post-trial review on this basis. *See* RCM 1107(a), Discussion ("It would be impracticable for the convening authority to take initial action ... when the convening authority is disqualified because the convening authority has other than an official interest in the case."); *see also* Art. 64(b), UCMJ, 10 USC § 864(b) (1983). A finding of ineffective assistance of counsel cannot be based on failure to raise a claim that is without legal merit. *See United States v. Flack,* 47 MJ 415, 417–18 (1998).

Second, although defense counsel may object to a convening authority's performing a post-trial review when he is disqualified as an accuser, they were not legally required to make such a claim. *See Jeter,* 35 MJ at 447 (accuser disqualification not jurisdictional). Here, as pointed out by the appellate court below, the convening authority had otherwise demonstrated a favorable disposition toward appellant including a favorable pretrial agreement which significantly limited the punishment that appellant would face for his various drug offenses. We will not second-guess trial defense counsel's tactical decision to forgo possible objection and draw from that well one more time. *See United States v. Sylvester,* 47 MJ 390, 393 (1998) (no deficient performance to pursue clemency with potentially challengeable convening authority who was sympathetic to accused in past); *cf. United States v. Newman,* 14 MJ 474, 482 (CMA 1983) (notes disadvantages affecting clemency chances which may result from action by substitute convening authority).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.