Chief Judge CRAWFORD
delivered the opinion of the Court.
After an oral argument on May 12, 1998, we ordered a DuBay[1] hearing to determine whether the special court-martial convening authority, who ordered the pretrial investigation and recommended referral to a general court-martial, was disqualified because of an “other-than-official interest in appellant’s prosecution.” 49 MJ 232, 235 (1998). After the record of the DuBay hearing was returned to this Court, we granted review of the following issues:
I. WHETHER THE SPECIAL COURT-MARTIAL CONVENING AUTHORITY WAS SO CLOSELY CONNECTED TO THE OFFENSE THAT A REASONABLE PERSON WOULD CONCLUDE THAT HE HAD A PERSONAL INTEREST IN THE MATTER WHERE THE CONVENING AUTHORITY WAS A DIRECTOR (AND THUS A FIDUCIARY) AND A DISTRICT CHAIRMAN IN THE VICTIMIZED ORGANIZATION, WHERE HE WAS PERSONALLY APPROACHED IN HIS CAPACITY AS DIRECTOR BY ANOTHER LEADER IN THE ORGANIZATION FOR ASSISTANCE IN HAVING APPELLANT INVESTIGATED FOR CONSENSUAL SEXUAL ACTIVITY, WHERE HE THEN INITIATED THE INVESTIGATION AND WHERE THE CONVENING AUTHORITY SUBSEQUENTLY OBTAINED COMMAND AND SPECIAL COURT-MARTIAL AUTHORITY OVER APPELLANT.
II. WHETHER THE FINDINGS AND SENTENCE OF APPELLANT’S COURT-MARTIAL MUST BE SET ASIDE WHERE APPELLANT’S PLEA OF GUILTY WAS PROCURED BY FALSE AND FRAUDULENT STATEMENTS MADE BY AIR FORCE OFFICIALS TO THE DEPARTMENT OF JUSTICE IN ORDER TO OBTAIN A GRANT OF IMMUNITY FOR A VITAL GOVERNMENT WITNESS, WHERE THE GOVERNMENT FAILED TO PRODUCE THE DOCUMENTS CONTAINING THESE FALSE STATEMENTS TO APPELLANT DURING DISCOVERY AT THE TRIAL AND APPELLATE LEVEL AND WHERE THE STAFF JUDGE ADVOCATE WAS AWARE OF THE FALSE STATEMENTS DURING THE POST-TRIAL PROCESSING OF APPELLANT’S COURT-MARTIAL BUT FAILED TO ADDRESS THIS ERROR IN THE ADDENDUM TO THE STAFF JUDGE ADVOCATE’S RECOMMENDATION.
We hold contrary to appellant’s contentions for the reasons set forth below.
FACTS — ISSUE I
Colonel (Col) M, the special court-martial convening authority, testified at the DuBay healing that he was stationed at Tinker Air Force Base (AFB) from 1991 to 1996, first as the Vice Commander, then as the Wing Commander. As the Vice Commander, he had little contact with the Boy Scouts. When he became Wing Commander, he was asked and accepted, like his predecessor, to be the District Chairman of one of eight Boy Scout districts in Oklahoma.
The Wing Commander has a prominent position at Tinker AFB. He is the individual on base who interfaces with the community, including the Chamber of Commerce, the Oklahoma City Neighborhood Initiatives Program, and the Oklahoma Military Advisor Committee. Col M also formed the Oklahoma City Bombing Disaster Control Group. He was deeply involved with that Control Group for nearly 24 hours a day from April 19, 1995, for 10 days, and 12 hours a day for 6 weeks thereafter.
Prior to becoming District Chairman, an unsalaried position, Col M’s only contact with the Boy Scouts was as a Scout when he was a child, and a parent of a Scout from 1986-91. Personally, he was not overly involved with the Boy Scouts as a youth. He reached the *310 rank of Star (two levels below Eagle Scout) and was also a member of the Order of the Arrow. The district chairmanship did not consume a tremendous amount of time— meeting less than once a quarter.
Col M learned of the allegations against appellant from Mr. Moore, a full-time paid Scout employee, at a district meeting. Col M contacted the Staff Judge Advocate (SJA) and took actions similar to any case reported to him, initiating an investigation,[2] appointing an Article 32[3] investigating officer, nominating a slate of court members as per standard operating procedure, and forwarding the charges to the general court-martial convening authority. Col M never told Mr. Moore what actions he took; nor did Mr. Moore ask or pressure him in any way. Furthermore, Col M did not know any of the Scouts who had made allegations against appellant, and was not contacted by any family member.
Appellant’s transfer to Tinker AFB from Wright Patterson AFB, where he was administratively assigned but not physically located while attending college, was solely to ease the investigation and potential trial and not out of any personal interest. Since appellant was a Doctor of Philosophy candidate in Chemistry at the University of Oklahoma, his transfer to the Wing at Tinker AFB resulted in him being gainfully employed by the Director of Environmental Management at the Air Logistics Center. Prior to assigning appellant to the Environmental Management Director, Col M met with appellant and told him that he should take all the time necessary to work on his defense because this would be a very stressful time in his life. When not working on his defense, Col M told appellant to work hard for the Director because character evidence makes a difference at trial. He then personally drove appellant over to meet the Director.
At the DuBay hearing, the SJA described Col M’s Boy Scout role as an “honorary and nominal position[] in his relations in the community.” He was merely a figurehead. When asked by the defense if being District Chairman was an appointment duty, he responded: “[I]t was like many of his other duties, an honorary or a very nominal duty.”
Col M was not even sure he told the SJA of his position with the Boy Scouts.
DISCUSSION — ISSUE I
Article 1(9), Uniform Code of Military Justice, 10 USC § 801(9), defines an “accuser” as
a person who signs and swears to charges, any person who directs that charges nominally be signed and sworn to by another, and any other person who has an interest other than an official interest in the prosecution of the accused.
This provision was first enacted as an amendment to Article of War 65. This Article has been described as disqualifying a person from convening a court-martial who, “by reason of having preferred the charge or undertaken personally to pursue it, might be biased against the accused, if indeed he had not already prejudged his case.” William Winthrop, Military Law and Precedents 62 (2d ed. 1920 Reprint); see Arts. 22(b) and 23(b), UCMJ, 10 USC §§ 822(b) and 823(b). Moreover, Professor Davis describes an accuser as one who “initiates a charge out of a hostile animus toward the accused or a personal interest adverse to him....” George B. Davis, A Treatise on the Military Law of the United States 20 (3d ed. Revised 1913).
Similarly, this Court has found that there is a personal interest when the convening authority is the victim of the accused’s attempted burglary, United States v. Gordon, 1 USCMA 255, 2 CMR 161 (1952); where the accused tries to blackmail the convening authority by noting that his son was a drug abuser, United States v. Jeter, 35 MJ 442 (CMA 1992); and where the accused has potentially inappropriate personal contacts with the convening authority’s fiancée, United States v. Nix, 40 MJ 6 (CMA 1994). *311 However, a convening authority is not disqualified because of “misguided prosecutorial zeal,” United States v. Voorhees, 50 MJ 494 (1999), or where the convening authority issues an order that the accused violates. United States v. Tittel, 53 MJ 313 (2000).
Col M had no animus towards appellant and sought to ensure his gainful employment at Tinker AFB while the investigation was ongoing. Col M’s role with the Boy Scouts has been properly described as titular and “an honorary and nominal” position.[4] The initiation of charges was what any commander would do, and this is demonstrated by the fact that there were no further communications after the initial report made by Mr. Moore. Certainly, Col M was not the victim, was not an -individual being blackmailed, and in fact, took less action than the commander in Tittel. For these reasons, we hold that Col M did not have “an interest other than an official interest” in appellant’s case.
FACTS — ISSUE II
Prior to appellant’s plea at his trial on November 14, 1995, the defense was informed that the victim was given a grant of immunity. However, the victim continued in his refusal to testify, despite the immunity. Defense indicated after a session under RCM 802, Manual for Courts-Martial, United States (2000 ed.),[5] that they had no notice of the immunity given to the Scout. At the request of the judge, the Government gave the defense a copy of the grant of immunity from the Department of Justice, as well as the Tinker AFB Staff Judge Advocate’s letter seeking the grant of immunity. Those documents describe the victim’s age as 16. However, the defense was not given other documents prepared by attorneys at Bolling AFB and transmitted to the Department of Justice that misstated the victim’s age.
The only motion made at that time was to dismiss the charges on the basis that Article 125, Uniform Code of Military Justice, 10 USC § 925, is constitutionally defective. The defense also moved to dismiss on the grounds that the prosecution of the accused was in violation of Equal Protection rights under the Constitution; appellant had been singled out because of his sexual preference that violated Department of Defense Directives. The judge denied both motions, and they are not at issue in this case.
DISCUSSION — ISSUE II
Issue II raises questions of standing and mootness. Assuming, without deciding, that the defense is correct in its assertion that the Department of Justice gave the victim immunity under the mistaken belief that he was under 16 years of age when his sodomous relationship with appellant occurred, that issue is now moot. The Government never called the victim as a witness. See United States v. Napoleon, 46 MJ 279, 281-82 (1997); United States v. Loving, 41 MJ 213, 258 (1994)(applying mootness to the question of misconduct of judge). Secondly, the doctrine of invited error precludes any relief. The victim was called by the defense during the sentencing portion of the trial. Thus, any error as to the admission of the testimony was invited by the defense when they called the witness themselves. See, e.g., United States v. Reid, 46 MJ 236 (1997); United States v. Raya, 45 MJ 251 (1996); United States v. Schnitzer, 44 MJ 380 (1996).
Thirdly, appellant does not have standing to raise the violation of another’s Fifth Amendment rights. United States v. Johnson, 53 MJ 459, 461 (2000); United States v. Golston, 53 MJ 61, 64 (2000); United States v. Jones, 52 MJ 60, 63-64 (1999). Additionally, the record is clear that appellant pled guilty to prevent the victim from facing the consequences of refusing to testify after receiving a grant of immunity.
The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. United States v. DuBay, 17 USCMA 147, 37 CMR 411 (1967).

. It was because of the “don't ask don't tell” policy that he called the Office of Special Investigations and asked them to initiate the investigation.

. Uniform Code of Military Justice, 10 USC § 832.

. Commanders and convening authorities, because of their military positions, are often called upon to provide services to a host of civic organizations, both on base and in the surrounding communities. While nothing herein should discourage this practice, care should be taken to avoid potential disqualification due to an appearance of personal interest in a matter.

. All Manual provisions are identical to the ones in effect at the time of appellant's court-martial.