# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Russell A. MATTHEWS
### Aviation Survival Technician First Class (E-6), U.S. Coast Guard

**CGCMS 24896**
**Docket No. 1382**

**20 October 2014**

Special Court-Martial convened by Commander, Coast Guard Air Station Barbers Point. Tried at Honolulu, Hawaii, and Alameda, California, on 21 May and 12 June 2013.

| | |
|---|---|
| Military Judge: | CDR Kevin F. Bruen, USCG |
| Trial Counsel: | LT Kelly A. Vandenberg, USCG |
| Defense Counsel: | LCDR Christopher J. Deerwester, JAGC, USN |
| Assistant Defense Counsel: | LT Jackson A. Stephens, JAGC, USN |
| Appellate Defense Counsel: | LT Cara J. Condit, USCG |
| | LT Philip A. Jones, USCGR |
| Appellate Government Counsel: | LT Daniel Velez, USCGR |
| | LCDR Amanda M. Lee, USCG |

**BEFORE**
**McCLELLAND, GILL & KOVAC**
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of desertion, in violation of Article 85, Uniform Code of Military Justice (UCMJ); and one specification of wrongful use of marijuana, in violation of Article 112a, UCMJ. The military judge sentenced Appellant to confinement for twelve months, reduction to E-3, and a bad-conduct discharge. The Convening Authority approved the sentence but suspended confinement in excess of ten months. The pretrial agreement called for disapproval of confinement in excess of ten months.

Before this court, Appellant has assigned the following errors:

I.      The Convening Authority was a witness to AST1 Matthews' misconduct and greatly impacted by that misconduct. He was biased and should have been disqualified from taking action in his case.

II.     The Convening Authority's action is fatally flawed.

III.    The approved sentence was inappropriately severe and the bad-conduct discharge should be set aside.

We discuss the first issue and remand for a new convening authority action by a different convening authority. We do not reach the other issues.[1]

Appellant, stationed at Coast Guard Air Station Barbers Point, deserted his unit, left his car on a cliff above a beach, and went camping in the woods. (Prosecution Ex. 1.) The Coast Guard launched a search for him by vessel and aircraft because it was thought that he might have gone into the water. (R. at 102-03.) Air Station Barbers Point flew eighteen sorties for sixty-four hours over three to four days, involving every pilot including the commanding officer, in the course of the search. (R. at 82.)

Appellant argues that the Convening Authority, as the commanding officer of Air Station Barbers Point and responsible for the search efforts carried out by the air station's assets, was so closely connected to this case that he had a disqualifying personal interest in the case.[2] This issue was first raised shortly before the Convening Authority acted on the record, in Appellant's request for clemency requesting sentence relief.

Whether a convening authority is disqualified from taking action after trial is a question of law that is reviewed *de novo*. *United States v. Taylor*, 60 M.J. 190, 194 (C.A.A.F. 2004); *United States v. Davis*, 58 M.J. 100, 102 (C.A.A.F. 2003).

A convening authority is disqualified when he or she has a connection to a case of a personal rather than official nature. *United States v. Reed*, 2 M.J. 64, 68 (C.M.A. 1976). The

---

[1] However, we note that the Convening Authority's action and promulgating order do contain flaws.
[2] Appellant also argues that the Convening Authority displayed a predetermined attitude on clemency. We find no merit in this argument.

test is "whether, under the particular facts and circumstances . . . a *reasonable person* would impute to him a personal feeling or interest in the outcome of the litigation." *United States v. Jeter*, 35 M.J. 442, 445 (C.M.A. 1992) (quoting *United States v. Gordon*, 1 USCMA 255, 260, 2 C.M.R. 161, 166 (1952)).

In this case, the Convening Authority himself flew sorties searching for Appellant. Although he did so in an official Coast Guard capacity, it was in his capacity as a pilot, entailing personal risks to himself and his flight crew. We see his pilot capacity as different from his capacity as Appellant's commanding officer. We believe a reasonable person would impute to him a personal interest in this case.[3] *See Jeter* and cases cited therein, 35 M.J. at 446. We conclude that he was disqualified from taking post-trial action as the Convening Authority.

**Decision**

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed. The action of the Convening Authority is set aside. The record is returned for a new action by a different convening authority. Thereafter, the record shall be returned to this Court for review of the sentence.

Judge KOVAC concurs.

GILL, Judge (dissenting):

I agree that the guilty findings are correct and should be affirmed but respectfully disagree with the majority's conclusion that the Convening Authority is personally disqualified from post-trial participation in this case.

---

[3] This does not mean that we believe the Convening Authority harbored some actual "personal resentment," in the words of the dissent.

Appellant deserted Coast Guard Air Station Barbers Point Hawaii on October 9, 2012. He purportedly left the unit that day to attend a scheduled appointment. Instead, he went home, argued with his wife, took a backpack and drove to Kaena Point on Oahu. Without explanation or further communication, he left his vehicle parked in a remote area near a cliff and vanished.

When he did not return home, his wife notified civilian authorities. Locating his vehicle, they feared he may have jumped, fallen or been swept into the sea. A multi-agency land, sea, and air search and rescue operation ensued.

The Coast Guard's efforts were coordinated by Coast Guard Sector Honolulu. Aircraft from Appellant's unit flew 18 sorties over 64 hours in support of the search. Commander, Coast Guard Sector Honolulu suspended the Coast Guard's search efforts on October 11, 2012. Appellant returned home on January 21, 2013 – 105 days after deserting.

The Commanding Officer of Coast Guard Air Station Barbers Point is a special court-martial convening authority. Article 23(a), UCMJ; Coast Guard Military Justice Manual, COMDTINST M5810.1E, Ch. 3.A.2. But he may not exercise that authority in a case where he assumes an "accuser" role. R.C.M. 504(c)(1); R.C.M. 601(c). An "accuser" is a person who (1) signs and swears to charges, (2) directs that charges nominally be signed and sworn to by another, or (3) "has an interest other than an official interest in the prosecution of the accused." Article 1(9), UCMJ. Courts frequently refer to Convening Authorities disqualified on these grounds as type-one, type-two, and type-three accusers, respectively.

The accused contends that the Convening Authority was disqualified from taking action on the case because he is a type-three accuser.[4] In *United States v. Ashby*, the Court of Appeals for the Armed Forces explained:

---

[4] The Convening Authority's qualifications and impartiality were not challenged before trial, during trial, or at a post-trial Article 39(a) hearing. Nor were they mentioned in Appellant's first clemency request, dated June 25, 2013. The first, last and only expression in the record that Accused had any reservations about the Convening Authority's participation in the case is a single sentence in a second clemency request, dated September 8, 2013, which requests that "the Convening Authority recuse himself for the purpose of granting clemency in light of the fact that he may be considered a 'victim' of [Appellant's] misconduct and a reasonable person may consider him unable to impartially consider matters in clemency." The remainder of the petition recites all the reasons the Convening Authority should grant the clemency requested.

The test for determining whether a convening authority is an accuser is "'whether he was so closely connected to the offense that a reasonable person would conclude that he had a personal interest in the matter.'" *United States v. Voorhees*, 50 M.J. 494, 499 (C.A.A.F. 1999) (quoting *United States v. Jackson*, 3 M.J. 153, 154 (C.M.A. 1977)). "Personal interests related to matters affecting the convening authority's ego, family, and personal property" and "[a] convening authority's dramatic expression of anger towards an accused might also disqualify the commander if it demonstrates personal animosity." *Id.* We have found a personal interest where, for example, the convening authority is the victim in the case, *United States v. Gordon*, 1 C.M.A. 255, 2 C.M.R. 161 (1952); where the accused attempted to blackmail the convening authority, *United States v. Jeter*, 35 M.J. 442 (C.M.A. 1992); and where the accused had potentially inappropriate personal contacts with the convening authority's fiancée, *United States v. Nix*, 40 M.J. 6 (C.M.A. 1994).

68 M.J. 108, 130 (C.A.A.F. 2009).

Appellant's characterizations notwithstanding, the Convening Authority is not a victim of either Charge. There is no evidence in the record that Appellant's misconduct adversely affected the Convening Authority's ego, family, or personal property. Nor is there any indication that the Convening Authority ever harbored or expressed anger, resentment, or personal animosity towards Appellant for his misconduct.

The majority acknowledges that the Convening Authority's was acting in an official capacity while participating in the SAR mission but concludes that his official participation as a pilot entailed such risk to himself and his crew that we should impute a personal interest, which disqualifies him from taking action on the case. I disagree.

The Convening Authority is an aviator. Aviators fly. Even the most accomplished air station commanding officers are required to achieve and maintain certain minimum flight hours and satisfactorily conduct prescribed training evolutions on a recurring basis in order to remain proficient and qualified. *See* Air Operations Manual, COMDTINST M3710.1F dated 22 October 2007, Ch. 8.[5]

---

[5] The current version of the Air Operations Manual, COMDTINST M3710.1G dated 19 February 2013, Ch. 8, contains requirements to the same effect.

All flight operations involve an element of risk. The record provides no basis to assess whether the risks associated with the Convening Authority's SAR flight(s) were greater or equal to those inherent to any other mission or training he may be called upon to perform (i.e., law enforcement, ports/waterways coastal security, defense readiness, passenger transport, rescue swimmer deployment and recovery, shipboard landings, in-flight refueling, etc.). To the contrary, it suggests all Air Station personnel had safely returned from searching for Appellant months before he resurfaced and long before their Commanding Officer ever sought to don the Convening Authority role. I am not inclined to presume the Convening Authority harbored some personal resentment over needless risk he and his crew faced conducting a futile SAR mission where he actually knew, long before Appellant was apprehended, that no potential risk ever materialized into actual harm.

I might be more inclined to concur with the majority if, for example, the record revealed that the Convening Authority's search flight(s) involved especially hazardous or challenging environmental conditions, resulted in the cancellation of long-planned personal leave, required him to miss a particularly significant personal or family occasion, or were in the nature of a law enforcement search vice humanitarian search and rescue. But it does not. I am reluctant to impute a disqualifying interest to the Convening Authority on the basis of such scant evidence.

Appellate courts sometimes remand cases for further evidentiary proceedings when a party first challenges the Convening Authority's qualifications post-trial. *See United States v. Jeter*, 35 M.J. 442, 443 (C.A.A.F. 1992); *United States v. Dinges*, 55 M.J. 308 (C.A.A.F. 2001) (because Appellant's affidavit and other documentary evidence indicate he had personal contact with Convening Authority, *DuBay* hearing directed to detail findings of fact and conclusions of law to consider questions specified by the court). That is not necessary in this case. The Convening Authority's participation in the search for Appellant was known at the time of trial and at the time of the post-trial Article 39(a) session. The issue was waived by his unconditional guilty plea and failure to raise it a timely manner. *Jeter*, 35 M.J. at 447 ("We are inclined to believe that generally a violation of Article 22(b) is waived if an accused and his counsel are well aware thereof and make no objection or protest at trial."). *See also United States v. Shiner*, 40 M.J. 155 (C.M.A. 1994); *United States v. Schweitzer*, 68 M.J. 133 (C.A.A.F. 2009); *United*

*States v. Tittel*, 53 M.J. 313 (C.A.A.F. 2000); *United States v. Gudmundson*, 57 M.J. 493 (C.A.A.F. 2002).



For the Court,


Sarah P. Valdes
Clerk of the Court