UNITED STATES, Appellee,

v.

Private E2 Jason F. KOLODJAY, United States Army, Appellant.

ARMY 9700389.

U.S. Army Court of Criminal Appeals.

29 Dec. 1999.

For Appellant: Captain Marc D.A. Cipriano, JA (argued); Colonel John T. Phelps II, JA; Major Leslie A. Nepper, JA (on brief).

For Appellee: Captain Joseph A. Pixley, JA (argued); Colonel Russell S. Estey, JA; Lieutenant Colonel Eugene R. Milhizer, JA; Captain Mary E. Braisted, JA (on original brief); Colonel Russell S. Estey, JA; Captain Joseph A. Pixley, JA (on supplemental brief).

Before CAIRNS, Senior Judge, KAPLAN, and BROWN, Appellate Military Judges.

1. The appellant pleaded guilty to ten of fourteen original specifications and was convicted of eight of the ten specifications to which he pleaded guilty. He was also convicted of two contested specifications and acquitted of one contested specification. The military judge dismissed the remaining three specifications prior to the entry of findings.

2. Ecstasy is one of several street names for 3,4–methylenedioxy methamphetamine, the analog salt of 3,4–methylenedioxy amphetamine. *See* Uniform Controlled Substances Act, 21 U.S.C. §§ 812–13 (1998) (Schedule I).

3. The convening authority's action read, in pertinent part: "[T]he sentence is approved and ...

## OPINION OF THE COURT

KAPLAN, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to mixed pleas,[1] of attempted use and distribution of amphetamines, conspiracy to distribute lysergic acid diethylamide (LSD) and "ecstasy,"[2] violation of a lawful general regulation by wrongfully possessing drug abuse paraphernalia, possession and use of marijuana, use of "ecstasy," distribution of "ecstasy," and distribution of LSD (four specifications), in violation of Articles 80, 81, 92, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881, 892, and 912a [hereinafter UCMJ].

On 11 March 1997, the military judge sentenced the appellant to a dishonorable discharge, confinement for thirty-nine months, forfeiture of all pay and allowances, and reduction to Private E1. On 23 August 1997, the convening authority approved the sentence as adjudged, but in his action on the case, he suspended the forfeiture of allowances, but not pay, until 10 September 1997 and attempted to waive forfeiture of allowances, only, for a period that is somewhat uncertain, as will be explained *infra*.[3]

This case is before the court for automatic review pursuant to Article 66, UCMJ. We have considered the record of trial, the appellant's single assignment of error, the government's reply thereto, the supplemental brief filed by the government, the matters raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and the oral argument of counsel. We have determined that although neither the assigned error nor the *Grostefon* matters[4]

will be executed, but the execution of that part of the sentence extending to total forfeiture of allowances is suspended until 10 September 1997. The waiver of total forfeiture of allowances until 10 September 1997, a period of 6 months, was approved on the date of this action."

4. We reject the appellant's assertion that his pleas of guilty to the "ecstasy" charges are improvident because "ecstasy" is only a street name for an illegal controlled substance. The record reflects the appellant's agreement under oath with the military judge's statement that "ecstasy" is an unlawful, prohibited controlled substance, and that his actions involving "ecstasy" were criminal.

merit any relief, correction of the convening authority's action is required.

## DISCUSSION

### PART I: Failure to Announce Guilty Finding

■ The appellant's sole assignment of error in this case is grounded on the uncontested fact that the military judge failed to announce a finding of guilty as to Charge II and its Specification (alleging violation of a lawful general regulation by wrongfully possessing drug abuse paraphernalia) until a proceeding in revision, ordered pursuant to Rule for Courts–Martial [hereinafter R.C.M.] 1102(b)(1), held some three months after the appellant's court-martial adjourned. The appellant contends that the military judge's failure to comply with the R.C.M. 922 requirement that findings must be announced "promptly after they have been determined," equates to a finding of not guilty as to the pertinent charge and specification. Although the "statutory right of announcement of all findings in open court is a substantial right of the accused," *United States v. Dilday*, 47 C.M.R. 172, 174, 1973 WL 14692 (A.C.M.R. 1973), we find the appellant's argument that his substantial rights were materially prejudiced unpersuasive under the facts of this case.

■ The appellant pleaded guilty at his court-martial to Charge II and its Specification, which alleged a violation of a lawful general regulation, in contravention of Article 92, UCMJ. During the providence inquiry conducted pursuant to the mandate of *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969), the appellant admitted under oath each element of the offense of violation of a lawful general regulation by possessing drug abuse paraphernalia, in this case a drinking straw bearing drug residue. At the close of the providence inquiry, the military judge announced on the record that he found the appellant's pleas of guilty provident and that he accepted those pleas, including the plea to Charge II and its Specification. We suspect that as the result of numerous amendments to the various charges and specifications, made in order to bring them into conformity with the appellant's statements during the providence inquiry, the military judge inadvertently and erroneously failed to enter a formal finding of guilty as to Charge II and its Specification. He did enter formal findings as to all the other charges and specifications of which the appellant had been found guilty.

The military judge's error was discovered during the preparation of the staff judge advocate's [hereinafter SJA] R.C.M. 1106 recommendation, after authentication by the military judge of the verbatim court-martial transcript. The error was then properly addressed. *See, e.g., United States v. Jones*, 46 M.J. 815 (N.M.Ct.Crim.App.), *pet. denied*, 48 M.J. 390 (1997). The convening authority, acting on the advice of his SJA, ordered a proceeding in revision, as authorized by R.C.M. 1102. At this proceeding in revision, the military judge acknowledged his error and stated his intent to correct that error by announcing findings as to Charge II and its Specification. Prior to doing so, however, he asked if there were any objections. Both the trial counsel and the defense counsel affirmatively stated that they did not object. The findings of guilty as to Charge II and its Specification were then formally announced. Under this set of facts, we find no error materially prejudicial to a substantial right of the appellant. *See* UCMJ art. 59(a).

### PART II: Ambiguous Article 60 Action

■ The sentence adjudged in this case included forfeiture of all pay and allowances. Our examination of the record of trial, including the allied papers, has revealed the following facts. On 26 March 1997, the appellant's trial defense counsel submitted a formal "Request for Deferment and Waiver of Forfeiture of Pay and Allowances." The appellant's request was not presented to the convening authority for decision until 23 August 1997, the same date the convening authority took his Article 60, UCMJ, action on the appellant's court-martial.[5] The delay re-

---

5. Because a deferment of forfeitures normally ends on the date the convening authority takes his Article 60, UCMJ, action, a delay in acting on an appellant's deferment request until the date of

sulted, at least in part, from the government's insistence that the appellant complete an official finance form designating his spouse as an allotment recipient prior to submission of the deferment and waiver request to the convening authority for his decision.[6]

The requested allotment form was completed by the appellant on 27 June 1997. However, on that same date, the appellant's defense counsel submitted a "Petition for Clemency" in which she asked the convening authority to "disapprove the adjudged sentence of total forfeitures" and to "waive total forfeitures for a period of six months in accordance with Article 58(b) [sic] of the UCMJ." An 11 July 1997 memorandum to the SJA, signed by a legal noncommissioned officer, indicates that the trial defense counsel clarified the clemency request in a telephone conversation, indicating that what the appellant actually sought was an Article 58b waiver, not disapproval of the adjudged total forfeitures. In a separate memorandum to the convening authority, dated 23 August 1997, which was not part of the Addendum to the SJA's R.C.M. 1106 recommendation, the SJA recommended partial approval of the appellant's request. The SJA recommended a deferment and a six-month waiver of the forfeiture of allowances only. The matter then became more confusing when, on 23 August 1997, the convening authority signed two documents: (1) a memorandum to the appellant responding to the 26 March 1997 request for deferment and waiver, and (2) the Article 60, UCMJ, action on appellant's court-martial. In the first document, the convening authority approved the appellant's

request for deferment of "forfeiture of pay and allowances adjudged in this case until the date the sentence is approved." He also approved the appellant's request for waiver of "forfeiture of pay and allowances adjudged in this case until 10 September 1997, a period of six months."[7] In the Article 60 court-martial action, however, the convening authority approved the adjudged sentence, and then he suspended total forfeitures of allowances until 10 September 1997 and waived "total forfeiture of allowances until 10 September 1997, a period of six months."

The inconsistency between the convening authority's memorandum of 23 August 1997, approving *a deferment and waiver of pay and allowances*, and the convening authority's Article 60, UCMJ, action signed the same day, approving a *suspension and waiver of allowances only*, is problematic. Because we are unable to determine the convening authority's true intent, a new review and action are appropriate to resolve this inconsistency.

### PART III: Article 58b Waiver

Although the appellant has not asserted it as error, we deem it appropriate to also address the convening authority's attempt to implement an Article 58b, UCMJ, waiver of forfeiture of allowances in this case, for the benefit of appellant's wife and two minor children. This case vividly demonstrates the technical and complicated nature of the recently enacted rules established in Articles 57(a) and 58b, UCMJ, particularly the sometimes confusing interrelationship of legal

---

action ordinarily has the effect of denying the appellant's request. *See* R.C.M. 1101(c)(6)(A). We remind SJA's that requests for deferment of confinement, forfeitures, or reductions in grade must be processed expeditiously.

6. An allotment request would have been necessary to ensure that any *deferred* forfeitures of pay and/or allowances would go to the appellant's dependents. Such an allotment would not have been required in connection with the appellant's waiver request, however, because Article 58b(b), UCMJ, grants the convening authority sole discretion to waive forfeitures of pay and allowances, in any amount, with direction that the amount so waived shall be paid to the soldier's

dependents, whether or not the appellant has requested such a waiver.

7. Further complicating matters was the format of the memorandum and the method the convening authority used to indicate his decisions. The memorandum provided the convening authority three options regarding deferment and three options regarding waiver. Each option was bracketed by parentheses, and for each option, the convening authority circled "approved," crossed out "disapproved," but left unannotated any intended disposition as to the third option, "approved in part; the forfeiture of allowances required by Article [57(a)(a)(2)] [58b(b)], UCMJ, is [deferred] [waived]."

terms of art, such as "deferment," "waiver," and "suspension."

A review of a few fundamental principles is appropriate. First, "deferment" is a postponement of the running of an adjudged sentence (or part thereof). *See* R.C.M. 1101(c)(1). Second, once the convening authority takes action on a case, except as specified in R.C.M. 1101(c)(6), any deferment terminates. Third, Article 58b(a) "automatic forfeitures" only take effect if a service member is due pay and/or allowances, i.e., either no forfeitures were adjudged or any adjudged forfeitures were deferred, suspended, or disapproved. Fourth, a "waiver" is a grant of relief from statutorily-mandated, automatic forfeitures, subject to the condition that the pay and/or allowances otherwise subject to automatic forfeiture will be paid directly to a dependent for support. *See* UCMJ art. 58b(b). Fifth, waiver pursuant to Article 58b(b), by its own terms, only pertains to automatic forfeitures, not to forfeitures adjudged by the sentencing authority (military judge or members).[8] *See* R.C.M. 1101(d)(1). Finally, "suspension" of a sentence is a "probationary period during which the suspended part of an approved sentence is not executed." *See* R.C.M. 1108(a). The suspended punishment may be remitted upon the accused's successful completion of the probationary period.

■ Applying these basic rules and considering the clear language of Article 58b, we conclude that if adjudged forfeitures are not deferred prior to action, and are approved without suspension at the time of the Article 60, UCMJ, action, then Article 58b waiver is unavailable because the adjudged forfeitures will be executed, and there will be no automatic forfeitures to waive. *See* UCMJ art. 58b(b); *United States v. Saia*, 48 M.J. 461 (1998) (summary disposition). *But see United-*

ed States v. Owen, 50 M.J. 629 (A.F.Ct.Crim. App.1998).

In the appellant's case, the wording of the convening authority's action may have produced the following unintended results. In the 23 August 1997 action, the convening authority approved the adjudged sentence (including total forfeitures) and suspended the forfeiture of allowances until 10 September 1997. A suspension of a court-martial sentence, or any part thereof, may only be effected after the sentence has been approved, i.e., when action is taken on the case. *See* R.C.M. 1108(b). Therefore, the suspension of the forfeiture of allowances in appellant's case was effective for only nineteen days (23 August–10 September 1997), not for the six-month period the convening authority presumably intended. In addition, the language of the action suggests that the convening authority intended to order waiver of forfeiture of allowances for a period of six months (from 11 March, the date the court-martial adjourned, until 10 September 1997). However, there would have been no forfeitures to waive until fourteen days after the sentence was adjudged: 25 March 1997. *See* UCMJ art. 57(a) (forfeitures of pay or allowances take effect fourteen days after the sentence is adjudged, or when the sentence is approved by the convening authority, whichever is earlier). Thus, even if we gave retroactive effect (from 25 March 1997 to the date of action) to the convening authority's 23 August 1997 approval of the appellant's request for deferment of forfeitures, any waiver approved by the convening authority would have been effective for only five and one-half months (from 25 March to 10 September 1997), not six months, as stated in the Article 60, UCMJ, action. This discrepancy provides an additional ground supporting our holding that the action in this case is ambiguous or erroneous, within the meaning of R.C.M. 1107(g).[9]

---

8. We question whether Congress anticipated or intended this anomalous situation when it enacted Article 58b, UCMJ. It would appear that Article 58b could be easily amended to authorize waiver of adjudged, as well as automatic forfeitures.

9. If it is the convening authority's intent to waive the forfeiture of allowances, but not pay, for a period of six months, the maximum period au-

thorized by law (*see* R.C.M. 1101(d)), the new R.C.M. 1107(g) action should: (1) defer adjudged forfeiture of allowances only, from 25 March 1997 until 23 August 1997 (*see* R.C.M. 1101(c)); (2) approve the forfeiture of all pay and allowances (*see* R.C.M. 1107(d)); (3) order the execution of the adjudged forfeiture of pay but suspend the execution of the adjudged forfeiture of allowances from 23 August 1997 until 24 September

## DECISION

The action of the convening authority, dated 23 August 1997, is set aside. The record of trial will be returned to The Judge Advocate General for a new R.C.M. 1106 staff judge advocate's recommendation and a new action by the same convening authority in accordance with Article 60(c)–(e), UCMJ.

Senior Judge CAIRNS and Judge BROWN concur.

1997 (*see* R.C.M. 1107(f)(4)(B)); and (4) waive the automatic forfeiture of allowances from 25 March 1997 until 24 September 1997, with direction that such allowances be paid directly to the appellant's spouse (*see* R.C.M. 1101(d)).