**UNITED STATES, Appellee,**

v.

**Private E1 Keisha M. NICHOLSON,
United States Army, Appellant.**

**ARMY 9900290.**

U.S. Army Court of Criminal Appeals.

25 May 2001.

For Appellant: Colonel Adele H. Odegard, JA; Major Jonathan F. Potter, JA; Captain Jimmonique R.S. Rodgers, JA; Captain Arun J. Thomas, JA (on brief).

For Appellee: Major Anthony P. Nicastro, JA; Captain Karen J. Borgerding, JA (on brief).

Before CAIRNS, Senior Judge, BROWN, and VOWELL, Appellate Military Judges.

OPINION OF THE COURT

BROWN, Judge:

A military judge sitting as a special court-martial empowered to adjudge a bad-conduct discharge convicted the appellant, pursuant to her pleas, of conspiracy to use cocaine, false official statement (two specifications), wrongful use of cocaine, larceny of private property (two specifications), and forgery (six specifications), in violation of Articles 81, 107, 112a, 121, and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 912a, 921, and 923 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, forfeiture of $639.00 pay per month for five months, and five months of confinement.

This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We have considered the record of trial, the briefs submitted by the parties, and the matters personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

In her sole assignment of error, the appellant alleges that the staff judge advocate (SJA) denied the appellant any meaningful opportunity for clemency by incorrectly advising the convening authority on his power to waive forfeitures pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b. As relief, the appellant requests that we order a new staff judge advocate recommendation (SJAR) and action. We agree that the SJA misadvised the convening authority. We will grant relief, albeit in different form and, in part, for different reasons than those suggested by the appellant. The appellant's *Grostefon* matters, in part, mirror or supplement the assignment of error. To the extent that we grant relief on the assignment of error, we grant relief on the analogous *Grostefon* issue. We find no merit in the remaining *Grostefon* matters.

## BACKGROUND AND POST-TRIAL PROCESSING

The appellant's court-martial, including the providence inquiry, was uneventful. The preparation and authentication of the record of trial (ROT) were timely.[1] The remainder of the post-trial processing of her case, however, does not provide a model worthy of emulation.

By operation of law, the appellant's adjudged forfeitures were to take effect on 30 March 1999, fourteen days after the date on which the sentence was adjudged. *See* UCMJ art. 57(a)(1), 10 U.S.C. § 857(a)(1). Even if the convening authority deferred the adjudged forfeitures, the appellant was still subject to automatic forfeitures starting on the same date, unless the automatic forfeitures were also deferred or waived. *See* UCMJ art. 58b(a), (b). On 26 March 1999, the appellant submitted a written request[2] for deferment of adjudged forfeitures and waiver of automatic forfeitures for the benefit of her infant daughter. *See* UCMJ art. 57(a)(2), 58b(b).

In an endorsement dated 1 April 1999 [hereinafter SJA's endorsement], the SJA advised the convening authority that the "request to waive forfeitures may not be acted upon until you take action in the case." Additionally, the SJA recommended that the convening authority "disapprove the [appellant's] request for deferment of the adjudged forfeiture of pay." The same day, the convening authority signed an endorsement— apparently prepared by the SJA's office—

that disapproved the request for deferral of forfeitures. The convening authority's endorsement also stated: "The request to waive forfeiture of pay is premature and must be submitted as part of the R.C.M. 1105 submissions. Art. 58b(b) states that waiver is a matter to address at the time action is taken under Art. 60, UCMJ, 10 U.S.C. § 860."

As noted previously, the military judge authenticated the ROT on 23 April 1999. Inexplicably, the uncomplicated, three-page SJAR is dated 12 July 1999—*eighty* days after authentication. By this point, the appellant's trial defense counsel had been reassigned to Germany. Rather than faxing the SJAR, the SJA's office mailed the document to the appellant's counsel, who received the SJAR on or about 23 July 1999—three months after authentication.

In a rather impassioned Rule for Courts-Martial 1105/1106 submission [hereinafter R.C.M.], received on 27 August 1999, the trial defense counsel summarized the delay in post-trial processing. He noted that his client completed her confinement on or about 26 July 1999 and was no longer entitled to receive pay at that point.[3] He explained that the unjustified post-authentication delay and the previous refusal to consider the appellant's request to waive automatic forfeitures mooted the opportunity to waive such forfeitures at action.[4] In taking the government to task for dilatory processing, the trial defense counsel requested alternative relief in the form of disapproval of the conviction,

---

1. The appellant was tried on 16 March 1999. After examination of the ROT by the trial defense counsel, the military judge authenticated the ROT on 23 April 1999.

2. The trial defense counsel's memorandum also discussed deferment of a reduction in grade and incorrectly referred to the appellant once as a male. As the appellant was already serving at the lowest enlisted grade at the time of trial, there was no adjudged reduction in grade to defer. In an age of word processing and formatted templates, counsel still need to proofread documents carefully before submitting them. Carelessness can cause the client's perception of the quality of representation to suffer. Regardless, we encourage SJAs to focus themselves and their convening authorities on the substance, not the form, of the submission.

3. Although not stated in the R.C.M. 1105/1106 submission, we presume that the appellant was no longer entitled to receive pay because she was placed on excess leave. *See* Army Reg. 600–8–10, Personnel Absences: Leaves and Passes (1 July 1994).

4. Although we have no need to resolve the issue in this case, we do not necessarily agree that the appellant lost all opportunity to have automatic forfeitures waived in favor of her daughter. We have reviewed numerous cases in which the convening authority has purported to defer or waive forfeitures after the fact. Absent any complaints from appellants, we presume that the Defense Finance and Accounting Service is processing and paying retroactive deferments and waivers of forfeitures.

disapproval of the bad-conduct discharge, or approval of a post-trial request for administrative discharge, pursuant to Army Regulation 635–200, Personnel Separations: Enlisted Personnel, Chapter 10 (17 Sept. 1990) [hereinafter Chapter 10].

In an addendum to the SJAR, dated 31 August 1999, the SJA reaffirmed her previous opinion that Article 58b, UCMJ, does not allow waiver of automatic forfeitures prior to action. The SJA also stated that her "office processed the post-trial recommendation diligently, commensurate with limited staffing and an increase in caseload." In what some may interpret as thinly veiled acrimony, the SJA commented on the trial defense counsel's delay in submitting the R.C.M. 1105/1106 matters, including the request for administrative discharge. On 1 September 1999, the convening authority followed the SJA's recommendation by approving the sentence as adjudged and by disapproving the appellant's Chapter 10 request.

### DISCUSSION

The appellant's case presents two issues that are all too familiar on appeal: (1) an allegation of SJA error in the post-trial process; and (2) an unreasonable delay in post-trial processing. In the appellant's case, both issues have merit.

### I. SJA Error in the Post–Trial Process

First, we hold that the SJA erred when she advised the convening authority that he could not act on a request for waiver of automatic forfeitures prior to action. Article 58b(b), UCMJ, provides:

In a case involving an accused who has dependents, the convening authority or other person acting under section 860 of this title (article 60) may waive any or all of the forfeitures of pay and allowances required by subsection (a) for a period not to exceed six months. Any amount of pay or allowances that, except for a waiver under this subsection, would be forfeited shall be paid, as the convening authority or other person taking action directs, to the dependents of the accused.

■ While we understand the SJA's stated reasons for her advice to the convening authority, we find nothing in the UCMJ or the Rules for Courts–Martial to suggest that a convening authority may not consider a waiver request prior to action. Article 58b, UCMJ, designates *who* is authorized to act on a waiver request; the provision is silent on the *timing* of the request. Rule for Court–Martial 1101(d)(1) explicitly states that "[t]he convening authority may waive and direct payment of any such forfeitures [resulting by operation of law] *when they become effective* by operation of Article 57(a)." (Emphasis added). Therefore, we hold that a convening authority may act on an Article 58b, UCMJ, request for waiver of automatic forfeitures at any time prior to or at the time of action.[5] *Cf. United States v. Spears,* 48 M.J. 768, 772–73 (A.F.Ct.Crim.App.1998), *pet. denied,* 52 M.J. 420 (1999). Obviously, as reflected in R.C.M. 1101(d)(1), a waiver of forfeitures may not be effective until fourteen days after a sentence is adjudged, since no forfeitures take effect prior to that time. *See* UCMJ art. 57(a)(1), 58b(a)(1); *see also United States v. Kolodjay,* 53 M.J. 732, 736 (Army Ct.Crim.App.1999).

The SJA initially provided this erroneous advice in processing the appellant's request for deferment and waiver of forfeitures. The SJA then repeated and reemphasized the erroneous opinion in the addendum to the SJAR. Because the convening authority was

---

5. Beyond our legal analysis, we note the logical flaw in the SJA's interpretation of Article 58b, UCMJ. It seems to us that Congress had two basic goals in enacting this statute: (1) to prevent or limit the pay and allowances that could be paid to a service member in post-trial confinement; and (2) to provide, at the convening authority's discretion, some limited compensation payable directly to the family of such confined service member. In looking at the second purpose, it seems incongruous to us that Congress, on the one hand, would recognize the need, in appropriate cases, to provide limited compensation to otherwise innocent family members and, on the other hand, would fail to provide a mechanism to pay that limited compensation in a timely fashion—starting shortly after trial—when the family may most need the money. *See generally* Office of The Judge Advocate General, *Joint Service Committee on Military Justice Report: Analysis of the National Defense Authorization Act Fiscal Year 1996 Amendments to the Uniform Code of Military Justice,* Army Law., at 141–42 (March 1996).

misadvised as to his authority to consider the waiver request submitted shortly after trial, we have no way of knowing what, if any, clemency he may have granted. To the extent that the appellant was denied a decision by the convening authority on the merits of the request for waiver of automatic forfeitures, the appellant has made " 'some colorable showing of possible prejudice.' " *United States v. Wheelus,* 49 M.J. 283, 289 (1998) (quoting *United States v. Chatman,* 46 M.J. 321, 323–24 (1997)). Therefore, we must either return the case for a new SJAR and action or provide meaningful relief. *Wheelus,* 49 M.J. at 289. In light of our disposition of the second issue, infra, we will moot any claim of prejudice due to the SJA's erroneous post-trial advice by providing meaningful relief[6] in our decretal paragraph. *See Wheelus,* 49 M.J. at 288.

## II. Unreasonable Delay in Post–Trial Processing

■ To compound the erroneous advice on the waiver issue, the post-trial processing of the appellant's case was inexplicably and unreasonably slow. The appellant does not allege that the time to prepare and authenticate the 152–page ROT—thirty-nine days— was unreasonable. In fact, this portion of the post-trial processing time seems most reasonable.

The eighty-day delay between authentication and preparation of the SJAR, however, appears inexplicable, if not unconscionable. The addendum to the SJAR attempts to explain this delay by: (1) noting that "this office processed the post-trial recommendation diligently, commensurate with limited staffing and an increase in caseload"; and (2) trying to focus much of the responsibility for the delay to the trial defense counsel. First, the SJA's explanation is unconvincing. It is inconceivable to us that any staffing shortage or workload surge could delay preparation of an uncomplicated, three-page SJAR for more than two and one-half months after authentication (and almost four months after trial). If there was more to justify or explain the delay, the SJA should have provided the

details. Second, any plausible explanation that the SJA could have proffered was undercut by the attempt to shift responsibility to the trial defense counsel. Arguably, the appellant might have submitted her Chapter 10 request and other R.C.M. 1105/1106 matters a bit faster. It seems to us, however, that much of the trial defense counsel's delay was attributable to his transfer to Germany and to the appellant's release from confinement—delays that likely would have been minimized or avoided by prompt preparation and service of the SJAR in April 1999.

We note that the appellant's brief to this court predates our decision in *United States v. Collazo,* 53 M.J. 721 (Army Ct.Crim.App. 2000). Nevertheless, we will apply the principles in *Collazo* to determine whether to grant relief and, if so, how much relief to grant.

In *Collazo,* this court determined that because of "fundamental fairness" the appellant was entitled to some sentence relief under the "totality of the circumstances" and considering the "record as a whole." *Collazo,* 53 M.J. at 727. *Collazo* and its progeny did not establish a formulaic approach to determine when such relief is warranted. *See, e.g., United States v. Bauerbach,* ARMY 9900287, 2001 WL 514455, 2001 CCA LEXIS 151 (Army Ct.Crim.App. May 15, 2001).

In examining the record in the appellant's case as a whole, we find that the inordinate delay in preparing and serving the SJAR exacerbated the SJA's erroneous advice on the Article 58b, UCMJ, waiver issue. Although the appellant has suffered no specific prejudice due to the post-trial processing delay, under the totality of the circumstances, it was unreasonable and fundamentally unfair to take eighty days after authentication to prepare a simple SJAR. Accordingly, we will grant relief in our decretal paragraph. *See* UCMJ art. 66(c); *Collazo,* 53 M.J. at 727.

### DECISION

To summarize, we have fashioned the relief in the appellant's case: (1) to moot the claim

---

**6.** By deciding to moot a claim of prejudice, we do not mean that we must necessarily provide the relief that the appellant originally requested

(i.e., deferral of adjudged forfeitures and waiver of automatic forfeitures for the benefit of the appellant's daughter).

of error in the SJA's endorsement and addendum to the SJAR under *Wheelus;* and (2) to provide relief, under the totality of the circumstances, for unreasonable post-trial delay under *Collazo.* As the appellant received but one sentence, we will provide unified relief to remedy both errors.

The findings of guilty are affirmed. Reassessing the sentence based on the errors noted and considering the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, forfeiture of $639.00 pay per month for three months, and confinement for three months.

Senior Judge CAIRNS and Judge VOWELL concur.