# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

———————————————

### No. 201700330

———————————————

### UNITED STATES OF AMERICA
Appellant

v.

### JAIME ORTIZ
Sergeant (E-5), U.S. Marine Corps
Appellee

———————————————

Review of Government Appeal Pursuant to Article 62, UCMJ.

Military Judge: Colonel Matthew J. Kent, USMC.
Convening Authority: Commanding General, 1st Marine Division,
Camp Pendleton, CA.
For Appellant: Major Kelli A. O'Neil, USMC; Lieutenant George R.
Lewis, JAGC, USN.
For Appellee: Lieutenant Doug Ottenwess, JAGC, USN.

———————————————

Decided 15 February 2018

———————————————

Before MARKS, JONES, and WOODARD, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent but may be cited as
persuasive authority under NMCCA Rule of Practice and Procedure
18.2.**

———————————————

WOODARD, Judge:

This case is before us on a government interlocutory appeal, pursuant to
Article 62(a)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. §
862(a)(1)(A), and RULE FOR COURTS-MARTIAL (R.C.M.) 908, MANUAL FOR
COURTS-MARTIAL, UNITED STATES (2016 ed.).

The government raises two assignments of error (AOE). First, the
government argues the military judge abused his discretion by finding the
convening authority (CA) to be an accuser in accordance with Article 1(9),

UCMJ, 10 U.S.C. § 801(9), and dismissing, without prejudice, all charges and specifications in the appellee's special court-martial. Second, the government contends this court does not have jurisdiction to review the military judge's ruling that the CA has an inelastic attitude towards post-trial processing, unless we find the CA's attitude contributed to the decision to dismiss the charges and specifications.

After carefully considering the record, the military judge's essential findings of fact and conclusions of law, and the submissions of the parties, we conclude that the military judge did not abuse his discretion by finding the CA to be an accuser and dismissing the charges and specifications without prejudice. On this matter, we find that the military judge's findings of fact are not clearly erroneous, his analysis and application of the law to the facts are correct, and the remedy applied is within the range of remedies available and not an abuse of discretion. Our agreement with the military judge that the CA is an accuser within the meaning of Article 1(9), UCMJ, and is therefore disqualified from taking *any* action in the appellee's court-martial—to include post-trial action—renders the government's second AOE moot.

## I. BACKGROUND

The appellee is a member of First Combat Engineer Battalion, First Marine Division (1st MarDiv), I Marine Expeditionary Force (I MEF). Major General (MajGen) Eric M. Smith assumed command of 1st MarDiv on 22 June 2017 and published his "Commanding General's Policy Statement on Hazing." Within this policy statement he withheld adjudication authority for all hazing cases within 1st MarDiv and announced that all "substantiated [hazing] cases will result in mandatory processing for separation."[1] He also issued to his staff and subordinate commanders his "First Marine Division Commanders and Staff Introduction" wherein he referred to hazing, stating, "[m]istreat a Marine or [S]ailor and you're gone from the team."[2]

On 11 and 12 July 2017, MajGen Smith sent a series of emails focused on hazing within 1st MarDiv to all 1st MarDiv commanders, sergeants major, and the 1st MarDiv staff judge advocate (SJA). In these emails, he expressed great concern with the number and frequency of alleged hazing incidents within 1st MarDiv, announced that hazing was his foremost issue of concern, and directed his subordinate commanders and staff to plan for and take specific actions to combat hazing. Further, he forcefully expressed his displeasure with those who were accused of hazing—referring to their alleged behavior as acts of disrespect to the Commandant of the Marine Corps and

---

[1] Appellate Exhibit (AE) VIII at 42; AE IX at 1.

[2] AE VIII at 32; AE IX at 1-2.

their fellow Marines who had recently lost their lives while in service to the nation.

Based upon the allegations levied against him, the appellee was placed into pretrial confinement on 13 July 2017. On 7 August 2017, charges were preferred against the appellee. The preferred offenses alleged that the appellee: conspired with several fellow noncommissioned officers to violate the Marine Corps' hazing order; that he violated the order by hazing five junior Marines within his unit; and that he physically assaulted two junior Marines by striking them in the chest with his fist.[3]

MajGen Smith referred the offenses to trial on 15 August 2017.[4] The appellee's trial defense counsel filed a motion to dismiss for unlawful command influence (UCI). Within that motion, he also argued, alternatively, that MajGen Smith had acted as an accuser and should be disqualified from taking further action in the appellee's case, "including both pre-trial and post-trial matters."[5] The military judge granted the defense motion "in part," finding MajGen Smith to be an accuser in accordance with Article 1(9), UCMJ, and dismissed all charges and specifications without prejudice, noting that the charges "may be considered for disposition by any superior [CA], within their legal discretion."[6] Having disqualified MajGen Smith as the CA, the military judge deemed the remaining UCI issues moot.[7] The government appealed the dismissal to this court on 7 November 2017.

---

[3] AE III at 29-31; AE IX at 3. Marine Corps Order (MCO) 1700.28B, dated 20 May 2013, is a punitive general order, violations of which may be punished under Article 92, UCMJ. The appellee was charged with three specifications of Article 81, UCMJ (conspiring to violate MCO 1700.28B), for conspiring with fellow noncommissioned officers to haze junior Marines through forced haircuts and pressing their rank insignia into their chest; one specification of Article 92, UCMJ (violation of MCO 1700.28B), for ordering junior Marines to perform "planks" while other Marines cut their hair, pressing rank insignia into junior Marine's chests, and requiring junior Marines to perform unauthorized physical training; and two specifications of Article 128, UCMJ (assault consummated by battery), for striking junior Marines on their chest with his fist.

[4] AE VIII at 53.

[5] AE II at 9.

[6] AE IX at 1 and 7.

[7] *Id.* at 1.

**II. DISCUSSION**

## A. Jurisdiction

Military appellate courts are courts of limited jurisdiction. Government appeals are not favored and are only available upon specific statutory authorization. *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008). Our statutory jurisdictional authority to hear this appeal is Article 62(a)(1)(A), UCMJ, which authorizes the government to appeal "[a]n order or ruling . . . which terminates the proceedings with respect to a charge or specification" in a court-martial where a punitive discharge may be authorized. The military judge's ruling terminated the proceeding for all charges and specifications, and a punitive discharge was authorized for each offense charged. *See* Arts. 81, 92, and 128, UCMJ. Accordingly, we have jurisdiction to review the military judge's determination that MajGen Smith was an accuser and the remedy applied.

## B. Article 62, UCMJ, appeal standard of review

"In an Article 62, UCMJ, appeal, this [c]ourt reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial." *United States v. Henning*, 75 M.J. 187, 190-91 (C.A.A.F. 2016) (citation and internal quotation marks omitted). We review a military judge's ruling to dismiss charges and specifications under an abuse of discretion standard. *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010); *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

The abuse of discretion standard recognizes that "when judicial action is taken in a discretionary manner, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error in judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993) (citation and internal quotation marks omitted). The abuse of discretion standard of review also "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *Gore*, 60 M.J. at 187 (citation omitted).

## C. Accuser issue

### 1. Standard of review

The question of whether a CA is an accuser under Article 1(9), UCMJ, is a question of law we review *de novo*, and "we review [the military judge's] factfinding under the clearly-erroneous standard[.]" *Henning*, 75 M.J. at 191 (citation and internal quotation marks omitted). "[W]here the military judge places on the record his analysis and application of the law to the facts,

deference is clearly warranted." *United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014) (citations and internal quotation marks omitted).

In contrast to our powers of review under Article 66(c), UCMJ, in an Article 62, UCMJ, appeal, we "may act only with regards to matters of law." Art. 62(b); R.C.M. 908(c)(2). "When a court is limited to reviewing matters of law, the question is not whether [this court] might disagree with the trial court's findings, but whether those findings are fairly supported by the record." *Gore*, 60 M.J. at 185 (citations and internal quotation marks omitted). We are not permitted to substitute our own interpretation of the facts for those of the military judge. *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007). "If the findings are incomplete or ambiguous, the appropriate remedy . . . is a remand for clarification or additional findings." *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995) (citation and internal quotation marks omitted).

*2. The law*

Convening authorities are presumed to act without bias when taking action upon allegations of misconduct. The accused has the burden of rebutting this presumption. *United States v. Argo*, 46 M.J. 454, 463 (C.A.A.F. 1997). Thus, a CA is presumed not to be an accuser. The standard of proof required to overcome this presumption is a preponderance of the evidence. R.C.M. 905(c)(1).

"An accuser may not convene a general or special court-martial for the trial of the person accused." R.C.M. 504(c)(1); *see* R.C.M. 601(c). Article 1(9), UCMJ, defines an accuser as "an individual: (1) who signs and swears to charges; (2) who directs that charges nominally be signed and sworn to by another [type two accuser]; *or (3) who has an interest other than an official interest in the prosecution of the accused* [type three accuser]." *United States v. Ashby*, 68 M.J. 108, 129 (C.A.A.F. 2009) (internal quotation marks omitted) (emphasis added) (alteration in original); *see also United States v. Jeter*, 35 M.J. 442, 445 (C.M.A. 1992); R.C.M. 601(c) and 201(b). Articles 22(b) and 23(b), UCMJ, disenfranchise any statutorily defined accuser in Article 1(9), UCMJ, from convening a general or special court-martial, requiring instead that "the court shall be convened by superior competent authority[.]" *Jeter*, 35 M.J. at 445. "[T]he prohibition against the convening of a . . . court-martial by an 'accuser' was designed to protect an accused from a vindictive commander seeking to obtain a conviction because of some personal interest in the case and using his power as a [CA] to obtain this result." *Id*. at 446.

The test for determining whether a CA is a type three accuser, and therefore disqualified to act as the CA in a case, is whether that CA is "so closely connected to the offense that a reasonable person would conclude that

he had a personal interest in the matter." *United States v. Voorhees*, 50 M.J. 494, 499 (C.A.A.F. 1999) (citations and internal quotation marks omitted).

A CA is not *per se* disqualified as an accuser if he expresses disdain for a particular type of crime or its adverse effect upon good order and discipline within the command. *United States v. Davis*, 58 M.J. 100, 103 (C.A.A.F. 2003). Furthermore, "a [CA] fulfilling his or her responsibility to maintain good order and discipline in a military organization need not appear indifferent to crime. Adopting a strong anti-crime position, manifesting an awareness of criminal issues within a command, and taking active steps to deter crime are consonant with the oath to support the Constitution . . . ." *Id.* (citations omitted).

However, "[a CA] is disqualified [as an accuser] when his conduct is of a personal rather than an official nature." *United States v. Jackson*, 3 M.J. 153, 154 (C.M.A. 1977). Disqualifying personal interests includes those matters that would directly affect "the [CA]'s ego, family, [] personal property," and similar personal interests. *Voorhees*, 50 M.J. at 499. "Misguided zeal, alone, however, is not sufficient" to establish a personal, rather than official, interest. *United States v. Thomas*, 22 M.J. 388, 394 (C.M.A. 1986) (citation and internal quotation marks omitted).

"[W]hether the words used by [or actions taken by] the [CA] ma[ke] him an accuser . . . involves an assessment of additional matters such as demeanor, tone, and context." *Voorhees*, 50 M.J. at 499 (citation omitted). In evaluating whether a CA is a type three accuser, the military judge must assess the unique and particular facts and circumstances of the case before him to determine whether "a reasonable person would impute to [the CA] a personal feeling or interest in the outcome of the litigation." *Conn*, 6 M.J. at 354 (citation omitted) (alteration in original).

*3. Findings of fact*

The military judge made the following findings of fact:

> . . .
>
> b. . . . Upon assuming command, [MajGen] Smith published his "Commanding General's Policy Statement on Hazing," . . . stat[ing] that "[w]ithin the [1st MarDiv], I will personally adjudicate all hazing cases, and all substantiated cases will result in mandatory processing for separation."
>
> c. . . . [MajGen] Smith issued his "[1st MarDiv] Commanders and Staff Introduction" . . . . [in which] he stated "[a]ll hazing cases come to me. Mistreat a Marine or [S]ailor and

you're gone from this team." . . . Under the heading "SOME FINAL POINTS", [sic] [MajGen] Smith stated "I cannot over-emphasize how seriously I take treatment of our Marines. We are full fledged family members and no one has to prove anything to anyone." Under the heading "RELATIONSHIPS", [sic] [MajGen] Smith writes "Each Marine or [S]ailor is like one of my sons or daughters."

d. On 11 July 2017, [MajGen] Smith sent an email to all commanders and all sergeants major in the [1st MarDiv] with the subject: UNSCHEDULED COMMANDERS' CALL. In the email, he stated "[w]e have 5 hazing allegations this week . . . [which is] a red star cluster for me. Hazing is THE single biggest issue I have, and that word does not seem to be getting down to all hands." Also, he states "I'm huddling up the Div leadership to determine how to tamp this brush fire down before it takes off into a full fledged forest fire. That said, each of these events allegedly happened in our battalion areas. That tells me we are not providing the supervision required and those who would haze have no fear of reprisal or being caught. That stops today." [MajGen] Smith also indicates: "[t]his is a commander issue. Come ready to talk about actions being taken and supervision being provided to ensure the tribe knows who is actually in charge here (answer, not LCpl Schmukateli)." Additionally, in this email to all commanders and all sergeants major, he addressed his [SJA] saying, "Judge, let's talk in the AM about pretrial confinement. If I have individuals retaliating (one allegation) then they are by definition a danger to my Marines.

e. . . . [O]n 12 July 2017, [MajGen] Smith sent a follow-up email . . . with subject: UPDATE TO HAZING ISSUE, . . . direct[ing] several new requirements for those standing duty and also specific timelines for investigation of reported hazing incidents. In the email, [MajGen] Smith stated his intent was to ". . . change the culture of our NCOs . . ." and "[i]f our NCO corps . . . would like to have more time to themselves, then supervision will go up and they'll put an end to this crap." Amongst other things, [MajGen] Smith directed in this email that: " . . . [d]uties are a 24 hour post (NON sleeping) . . .[.]" [MajGen] Smith also stated "[i]f NCIS/CID is involved, I don't intend to wait

for their investigation for the command to take action[.]" . . . "[T]he Marine Corps owns the barracks, not a few salty LCpls who probably can't fight their way out of a wet paper sack. We're the [1st MarDiv], victors at Guadalcanal, and we're reduced to dealing with jackassery from a few LCpls who think they are in charge. That will be proven wrong asap. We have 12 dead Marines in a KC-130 crash . . . and these few LCpls who haze can't even pay them the respect our Commandant has asked for . . . [.]" "[M]y assessment is that I've just been flipped the bird by lots of LCpls, so I'm headed there [sic] way to demonstrate this is an unwise [course of action] . . . [.]" In concluding this email to all commanders and sergeants major in the [1st MarDiv], he stated "I don't plan to focus on anything else until we solve this issue. I'll soon have to direct this for each of you (i[.]e[.] training will pause) if the problem isn't rectified."

f.  The Accused was placed into pre-trial confinement for hazing allegations on 13 July 2017. [Twenty] other Marines from [1st MarDiv] were also placed into pretrial confinement on 13 July 2017 for alleged hazing related incidents. Charges were preferred against the accused on 7 August 2017.

g.  In the following weeks, . . . [MajGen] Smith published his "Commanding General's Supplemental Guidance on Hazing." In this document, he states amongst other things that, "I have a strong personality and am in a position of authority, so I am obligated to ensure that none of you interpret my message against hazing as directing any specific outcome for any particular case[.]" "I do not require or expect a specific disposition, outcome, or sentence in any administrative or military justice case," and "I will continue to lawfully influence the behavior of our Marines by stating forcefully and clearly that misbehavior of the magnitude of hazing, drugs, and sexual assault are unacceptable and degrade our combat readiness."

h.  On 16 August 2017, [MajGen] Smith sent another email to all Commanders which included the following language, "Legal. I appreciate the hard work to provide justice to our Marines (those accused of violations and those who were the victims of violations). It's important that all hands

understand the standards, as set forth in our UCMJ and in Division policies will be upheld. . . . I'm looking [sic] justice. While I am trying to positively influence the behavior of our Marines, I'm not trying to influence your decisions regarding any particular case. We are all legally and morally bound to adjudicate each case individually, regardless of what any of us thinks 'higher HQ wants'.[8]

Having carefully examined the record of trial and scrutinized the military judge's findings of fact, we find that the military judge's findings of fact are not clearly erroneous and are fairly supported by the record. *See Gore*, 60 M.J. at 185. Despite the military judge making no findings of fact regarding MajGen Smith's affidavit,[9] this does not render his findings of fact incomplete or ambiguous. *See Lincoln*, 42 M.J. at 320. They do not leave unanswered "an essential predicate question for deciding whether or not he correctly determined" that a reasonable person would conclude that MajGen Smith had a personal, rather than official, interest in the matter. *United States v. Kosek*, 41 M.J. 60, 63 (C.M.A. 1994).

*4. Application of the law to the facts*

In his ruling, the military judge considered the demeanor, tone, and context of MajGen Smith's statements and actions. Additionally, in his analysis, he correctly applied the law—Article 1(9), UCMJ, R.C.M. 504(c)(1) and 601(c), and the opinions of *Voorhees, Jeter, Jackson,* and *Davis*—to the facts when finding that a reasonable person would impute to MajGen Smith a disqualifying personal, rather than official feeling or interest in the outcome of the case, thereby rendering him a type three accuser.

After recognizing and considering the otherwise permissible expressions of MajGen Smith's command powers and referencing the findings upon which he based his conclusions, the military judge concluded that:

[b]y invoking the storied history of the [1st MarDiv], by personally maligning those accused of crimes ([Lance Corporals] engaged in jackassery who can't fight their way out of a wet paper sack), by conflating their alleged misconduct with a totally unrelated, tragic mishap (12 dead Marines in a KC-130 crash), by casting their behavior as an act of disrespect towards the Commandant of the Marine Corps, by describing each Marine as like his son or daughter, by advising his subordinates that "[h]azing is THE single biggest issue I

---

[8] AE III at 1-3.

[9] AE VIII at 53-54.

have . . ." and threatening to halt training across the Division to address it personally if those subordinates do not rectify it, by continually directing his subordinates to drive this issue home to every Marine, by expressing contempt and impatience for the normal investigative process, and by stating he's been flipped the bird and is now going to demonstrate this was unwise, a reasonable observer would conclude that the [CA]'s ego is closely connected to the offense, and thus he has a personal interest in the matter.[10]

In reviewing the military judge's conclusions of law *de novo*, we must determine for ourselves whether a reasonable person would impute to MajGen Smith a personal, rather than official, feeling or interest in the outcome of the appellee's case. In doing so, we consider the demeanor, tone, and context of the *totality* of his actions and statements related to hazing.

Like the military judge, we recognize that many of the actions and statements of MajGen Smith were lawful—official in nature—expressions of his command authority. For example, his withholding of adjudication authority for hazing cases and expressions of disdain for hazing and its adverse effects upon operational readiness and good order and discipline within 1st MarDiv are clearly permissible exercises of official command authority. His expressions of paternalistic concerns for those under his command—which harken back to Lieutenant General John A. Lejuene's observations and lessons on Marine Corps leadership—are also permissible. However, MajGen Smith's official actions and statements went substantially beyond this type of permissible engagement and leadership.

MajGen Smith's statements suggest that he was personally offended by those alleged to have violated his hazing policy. He repeatedly emphasized that *he* would show those accused of hazing who was *really* in charge. He was unwilling to wait for the law enforcement investigative process to conclude before taking action against those accused of hazing. He equated the actions of those accused of hazing as a show of disrespect to the Commandant of the Marine Corps and their fellow Marines who had died while in service to the nation. He threatened to shut down all operational training in 1st MarDiv in order to address hazing if it continued. And most troubling, he let everyone know that he was personally offended by those who were accused of hazing, because they had "just . . . flipped [him] the bird" and he was headed their way to show them how unwise that decision and action was within his command.[11] The timing of all of these actions coincided with the appellee and

---

[10] AE IX at 6-7 (citing *Voorhees*, 50 M.J. at 499).

[11] AE VIII at 40; AE IX at 2-3, and 6-7.

twenty other Marines being placed into pretrial confinement on allegations of hazing. Having considered the *totality* of the actions taken and statements made by MajGen Smith—and considering their demeanor, tone, and context—we agree with the military judge's conclusion that a reasonable person would impute to MajGen Smith a disqualifying personal, rather than official, feeling or interest in the outcome of the appellee's case.

### D. Remedy applied

Dismissal of charges and specifications is a "drastic remedy" requiring courts to "look to see whether alternative remedies are available." *Gore*, 60 M.J. at 187. Upon the determination that MajGen Smith was an accuser in the appellee's court-martial, MajGen Smith was statutorily disqualified from convening the appellee's special court-martial. Art. 23(b), UCMJ; R.C.M. 504(c)(1).. Because the charges and specifications against the appellee had already been referred by MajGen Smith to a court-martial that he had convened, the most logical and practical remedy available to the military judge was dismissal of the charges and specifications in order to remove MajGen Smith as the CA. The military judge was without authority to simply withdraw the offenses from the court-martial as only MajGen Smith or a competent superior authority had the ability to do so. *See* R.C.M. 604(a).

The military judge had two dismissal remedy options—dismissal with prejudice or dismissal without prejudice. He applied the less draconian of the two. By dismissing the charges and specifications without prejudice, the military judge did not foreclose the I MEF commander or some other superior competent authority from convening a court-martial to try the appellee. *See* Arts. 22(b) and 23(b), UCMJ.

Based upon the military judge's finding that MajGen Smith was a type three accuser, we find that dismissal of the charges and specifications *without prejudice* was not an abuse of discretion. This discretionary judicial action was "within the range of remedies available and not otherwise a clear error in judgment." *Gore*, 60 M.J. at 189.

### III. CONCLUSION

The appeal of the United States under Article 62, UCMJ, is denied.

Senior Judge MARKS and Judge JONES concur.

For the Court



R.H. TROIDL
Clerk of Court